Argued and submitted September 30, resubmitted In Banc December 7, 1988, affirmed June 14, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# WALTER ST. HILAIRE,
*Appellant.*

(CM 87-0160, 87-0161;
CA A46929 (Control), A46930)
(Cases consolidated)

775 P2d 876

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals from convictions on three counts of sexual abuse in the first degree. ORS 163.425. He assigns as error admission of certain testimony on typical behavior of child victims of sexual abuse. We affirm.

Defendant was accused by an 11-year old girl of having touched her on the breasts and vagina and having made her touch his penis on several occasions while defendant was staying with an aunt with whom the child was then living. The child reported the incidents several weeks or several months after they allegedly had occurred. Her testimony about when they occurred was imprecise, and her account of exactly what occurred was initially quite vague.

The state, over objection, called Detective Robson, who testified that he specialized in child abuse cases and gave this testimony:

"Q. [Prosecution:] Mr. Robson, from your experience in interviewing numerous victims of sex abuse, I want to ask you just a couple of questions.

"First, are victims of sex abuse apt to report the crime immediately?

"A. [Robson:] Rarely. Only until recently are we getting some cases reported pretty early on, and that's only through the education process that the kids are getting at school and other places to where they feel a little bit more confident in making a report that somebody's going to listen to them. But rarely do we get a case reported right away. And being that we have probably less than 10 percent of actual cases reported, we sometimes never get the report.

"Q. Okay. From your interviewing of sex abuse victims, are they apt to remember date and details of the incident?

"A. Unless something were to occur, a specific event, because of various reasons they're going to minimize both the activity and when it did happen, the number of times and all these types of things that are specific more in a role to minimize and try to get rid of the event in their mind.

"Q. And do you see this as something that's fairly constant with sex abuse victims?

"A. Yes, and for various reasons."

Defendant's sole assignment of error is that the court

should not have permitted Robson to testify that victims of sexual abuse rarely report the crime immediately, often minimize the activity and often are imprecise about the dates of occurrences. The grounds for his objection are that the testimony was not relevant and that it was not supported by the foundation required by *State v. Brown,* 297 Or 404, 687 P2d 751 (1984). We reject both contentions.

**1, 2.** First, Robson's testimony was clearly relevant.[1] At trial, defendant implied through cross-examination that the purported victim's delay in reporting the abuse, lack of specificity about when the abuse had occurred and initial minimizing of the extent of the abuse demonstrated that her testimony could not be believed. By testifying that that behavior is typical of young abuse victims, Robson provided the jury with an alternative, but not exclusive, explanation for her apparent lack of recall.[2] "[I]f the jurors believed the experts' testimony, they would be more likely to believe the victim's account." *State v. Middleton, supra* n 2, 294 Or at 435. Thus, Robson's testimony was relevant to rebut defendant's theory of the case.[3]

**3, 4.** Defendant's other contention is that the state failed

---

[1] OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[2] We note that Robson expressed no opinion on the child's truthfulness, leaving that determination to the jury. Because the jury was free to find defendant more believable than the child, despite Robson's testimony, the admission of that testimony did not unfairly prejudice him. *See State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983).

[3] Contrary to defendant's assertions, *State v. Milbradt,* 305 Or 621, 756 P2d 620 (1988), does not undermine the precedential value of *Middleton.* In *Middleton,* the Supreme Court held that testimony from social workers concerning normal reactions to abuse is admissible. Reasoning that such evidence could help a jury to make an informed judgment about the credibility of a testifying child, the court implicitly found it relevant to that issue. 294 Or at 437.

The court qualified the admissibility of expert testimony on the "sex abuse syndrome" in *Milbradt.* It noted that, although the purported victims were two mentally retarded young adults, the state's expert was a Children's Services Division caseworker whose experience with abuse victims was limited to normal children. Because her testimony lacked relevance, the court admonished prosecutors to lay the foundation for scientific evidence required under *State v. Brown.* Read together, *Middleton* and *Milbradt* establish that expert testimony on reactions of children to sexual abuse may be relevant to the issue of credibility. Relevance, however, must be demonstrated by laying the *Brown* foundation.

to lay a proper foundation for Robson's testimony. As he correctly points out, "sex abuse syndrome" testimony must be supported by the foundation required by *State v. Brown, supra,* which sets forth seven factors that must be considered in determining the probative value of scientific evidence. *See State v. Milbradt, supra* n 3. The factors are:

"(1)   The technique's general acceptance in the field;

"(2)   The expert's qualifications and stature;

"(3)   The use which has been made of the technique;

"(4)   The potential rate of error;

"(5)   The existence of specialized literature;

"(6)   The novelty of the invention; and

"(7)   The extent to which the technique relies on the subjective interpretation of the expert." *State v. Brown, supra,* 297 Or at 417.

Defendant acknowledges that the state laid a foundation establishing Robson's qualifications and stature. He contends, however, that it failed to address the remaining factors.

The contention is unpersuasive. The factors are guidelines, not a checklist. As *State v. Brown, supra,* says:

"The existence or nonexistence of these factors may all enter into the court's final decision on admissibility of the novel scientific evidence, but need not necessarily do so. What is important is not lockstep affirmative findings as to each factor, but analysis of each factor by the court in reaching its decision on the probative value of the evidence under OEC 401 and OEC 702." 297 Or at 417. (Footnotes omitted.)

The court admitted Robson's testimony on the basis of this foundation: He had worked for the Benton County Sheriff's Department for 17 years, 14 of which had been spent investigating crimes involving child abuse and child sexual exploitation. He had received several hundred hours of training on the subject of sexual abuse of children, including seminars by the Board of Police Standards and Training, programs conducted by mental health agencies concerning sex abuse victims and offenders and a three-day seminar at the College of the Siskiyous on the sexual exploitation of children. He had himself conducted training for lay people and educators in Washington and Oregon on the subject of child abuse. Most significantly, he had personally interviewed over 400 alleged

sex abuse victims, 85 to 90 percent of whom were known certainly to have been abused.

That foundation specifically satisfied several of the *Brown* criteria. In testifying about typical behavior of sexually abused children, Robson merely drew observations from his extensive experience interviewing them. He was clearly qualified to do that. Moreover, because most of the children whom he had interviewed were known to have been abused, there was a low potential for error in his observations. Finally, because the testimony consisted of Robson's factual observations, there was little room for subjective interpretation on his part.

It is true that the state might have offered evidence on the existence of specialized literature in the field of the behavior of child abuse victims. Given that Robson's testimony was based on first-hand experience, however, that foundation was unnecessary. None of the remaining *Brown* criteria applies to the type of testimony offered here.[4]

5.      In addition to testifying that abuse victims often delay reporting the crime, minimize the number and extent of incidents of abuse and fail to recall dates and details concerning the abuse, Robson also offered explanations for *why* abused children behave as they do, *e.g.,* they "try to get rid of the event in their mind." As an attempt to give psychological reasons for behavior, that testimony may have exceeded the scope of his expertise. However, the objections to Robson's testimony were made before he testified and were only on the grounds of relevancy and lack of foundation. The trial court properly allowed him to testify as to what he knew on the basis of his personal experience. The question by the state that led to the arguably inadmissible response did not ask for Robson's opinion as to why children react in the manner that he observed. Therefore, when it became apparent that Robson might testify beyond the scope of his expertise, defendant was required to object in order to preserve error. He did not.

Affirmed.

---

[4] The trial court did not make specific findings on the existence or nonexistence of the *Brown* criteria. However, in admitting the evidence over defendant's objection about the adequacy of the foundation, the court implicitly found that the *Brown* requirements were satisfied. *See Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968).