Argued and submitted June 17, 1992, affirmed July 7, reconsideration denied October 27, petition for review denied November 16, 1993 (318 Or 61)

# STATE OF OREGON,
*Respondent,*

*v.*

# CARL DUANE WILSON,
*Appellant.*

## (90-05-33176; CA A69589)

855 P2d 657

David E. Groom, Salem, argued the cause and filed the brief for appellant.

Janie M. Burcart, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., concurring.

## DEITS, J.

Defendant appeals his convictions of three counts of sodomy in the first degree, ORS 163.405, and four counts of sexual abuse in the first degree, ORS 163.427, involving a ten-year-old child. He assigns error to the trial court's decision to allow a medical doctor to testify that she diagnosed the child as having been sexually abused. He also assigns error to the trial court's admission, under OEC 803(4), of a videotaped interview of the child made by personnel at Emanuel Hospital's Child Abuse Response and Evaluation Services (C.A.R.E.S.) Unit. Finally, he argues that the trial court erred in denying his motion for a new trial, or in the alternative for a mistrial, on the ground that the prosecutor made improper remarks during closing arguments. We affirm.

Defendant and the victim's mother had a sporadic relationship. Defendant would stay with her when he was in town, which was usually at least once a year. The child testified that defendant first touched her "private parts" when she was five years old and that the touching continued during his subsequent visits. Defendant last stayed with the child and her mother in December, 1989, for two weeks. The child testified that defendant repeatedly sodomized and sexually abused her during that visit. Shortly after defendant's last visit, the child told two school friends about the sexual abuse. In January, 1990, the child moved to her father's house. When the parents of the child's friends learned that the child had said that she was sexually abused, they told her father. The child's parents reported the abuse to Children's Services Division (CSD) and took the child to the C.A.R.E.S. Unit at Emanuel Hospital, where the child was examined by Dr. Bays. Bays' examination of her revealed no physical evidence of abuse. The child was also interviewed by a C.A.R.E.S. staff member and that interview was videotaped. On the basis of her evaluation of the child's interview, history and physical examination, Bays diagnosed sexual abuse.

In a motion *in limine*, defendant objected to a "state's expert [making] any comment regarding any alleged diagnosis * * * upon the ground * * * that any comment on an alleged diagnosis * * * would be a direct comment with regards to the credibility of the complainant in this case." The trial court denied the motion. On appeal, defendant argues:

"Dr. Bays' testimony and diagnosis was [*sic*] based entirely on what the child told her. It is therefore abundantly clear that Dr. Bays was telling the jury in every way possible that she believed the child's story, short of saying, 'I believed the child's story.' "

According to defendant, because there was no physical evidence of abuse, the jury could infer from Bays' diagnosis of sexual abuse that she believed the child, making that diagnosis an impermissible comment on the child's credibility.[1]

At trial, Bays was qualified, without objection, as an expert witness on child sexual abuse.[2] She testified to the following:

"Q    [I]s there a medical diagnosis, a recognized medical diagnosis called sexual abuse?

"A    Yes, there is.

"Q    All right. Tell us a little bit about that, please.

"A    Well, it's a diagnosis like any other diagnosis, like heart attack or a gall bladder problem or low back pain. If the diagnosis — usually the general diagnosis is child abuse and neglect and then under that there are different categories. So there would be child physical abuse, child neglect, failure to thrive, non-organic failure to thrive, child sexual abuse and so on.

"Q    Is it — you've indicated that the diagnosis that you would reach is based on both a physical exam and the history of the patient. Is that — is that an accurate description of what you use as information?

"A    That's correct.

"Q    And is that a common approach in the medical profession generally, to use that type of information to reach a diagnosis?

---

[1] At trial, defendant objected to the admission of Bays' diagnosis of the child, her testimony regarding the child's identification of defendant as her abuser and her testimony regarding the percentage of cases referred to the C.A.R.E.S. Unit that result in a diagnosis of sexual abuse. However, defendant did not object to the admission of any other portion of Bays' testimony that he assigns as error in this court. Accordingly, we only address the admissibility of those portions of Bay's testimony. *See State v. St. Hilaire*, 97 Or App 108, 775 P2d 876 (1989).

[2] Bays has conducted over a thousand examinations for sexual abuse and is the Medical Director of the C.A.R.E.S. program and Director of Child Abuse Programs at Emanuel Hospital.

"A   That is always the approach in medicine to use the history, the physical and sometimes laboratory or x-ray information.

"* * * * *

"Q   In seeing and examining [the child], did you reach a diagnosis as to whether that child had been sexually abused?

"A   Yes.

"Q   And will you tell the jury, please, what your diagnosis is.

"A   My diagnosis was that [the child] had been sexually abused."

■   OEC 702 delineates the permissible bounds of expert testimony:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

The decision to admit expert testimony is within the discretion of the trial court. *State v. Middleton*, 294 Or 427, 657 P2d 1215 (1983).

■   In *Middleton*, the court noted that there are limitations on opinion testimony. It explained that "in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." 294 Or at 438. The court concluded, however, that the fact that a jury could infer from an expert's testimony that another witness is or is not telling the truth is not necessarily an impermissible comment on the credibility of a witness:

"It is true that if the jurors believed the expert's testimony, they would be more likely to believe the victim's account. Neither of the experts directly expressed an opinion on the truth of the victim's testimony. Much expert testimony will tend to show that another witness either is or is not telling the truth. *See State v. Stringer*, 292 Or 388, 639 P2d 1264 (1982). This, by itself will not render evidence inadmissible." 294 Or at 435.

In *Middleton*, the court allowed two expert witnesses to testify, after defendant impeached the victim with her retraction of the allegations, that the victim's conduct was consistent with typical reactions of victims of familial child sexual abuse. The court rejected the idea that expert testimony concerning an ultimate issue usurps the function of the jury, because the jury is not bound by that testimony but must make the ultimate decision itself. 294 Or at 435.

In *State v. Keller*, 315 Or 273, 844 P2d 195 (1993), the court again applied the rule that one trial witness may not comment on the credibility of another trial witness. In that case, the defendant assigned as error the admission of specific portions of a doctor's testimony on the ground that it was a comment on the credibility of the complaining witness. The court agreed with the defendant that the doctor's testimony evaluating whether the child, who was an alleged victim of sex abuse, had been coached, led or had fantasized the incident was an impermissible comment on the credibility of the child, because each of those statements amounted to testimony that the child was credible.

Here, defendant argues that Bays' diagnosis of the child should have been excluded, because the jury could have inferred from that diagnosis that Bays believed the child's statements. We do not agree that the testimony was impermissible. Unlike the doctor in *State v. Keller*, Bays did not testify that the child had not been coached or led and had not fantasized the incident. As the court in *Keller* concluded, those statements were a direct comment on the credibility of the complainant. In this case, Bays testified that, on the basis of her evaluation of the child's interview, physical examination and history, she diagnosed the child as having been sexually abused. Although, if believed, Bays' testimony supported the child's testimony, that does not render it a *direct* comment on the child's credibility. It was an opinion as to the proper medical diagnosis. A medical doctor is not precluded from testifying as to her medical diagnosis simply because the jury may infer from that testimony that another witness is or is not telling the truth. Defendant had the opportunity to cross-examine Bays regarding the basis of her diagnosis. In addition, defendant produced his own expert witness who testified that there was insufficient evidence to support a

diagnosis of sexual abuse. The trial court did not err in admitting Bays' diagnosis of the child as a victim of sexual abuse.

■     Defendant also assigns error to the admission of Bays' testimony regarding the percentage of cases evaluated by the C.A.R.E.S. Unit in which sexual abuse is diagnosed. Bays testified:

"Q   Of the cases that come in at the CARES program, child sexual abuse cases, how many are founded, how many are determined to be unfounded, give us the breakdown, please.

"A   Well, first it varies from month to month, depending on the cases that we see. And second, we usually have three categories. One is where we make a diagnosis of child abuse, either based on the history, the physical or both. Second is where we are uncertain or cannot decide, but we have concerns. And third is where we find no evidence of abuse. And it varies month to month. I try every year to look at the results for a few months every year and I can give you an example. In July, '89, forty-two percent of the cases we found evidence of abuse. In June, '89, twenty-two percent. In September '88, sixty-five percent.

"Q   Can I ask you this: When you give us the percent where you found where the case was founded, can you give us the percent where cases were not founded. In other words, determined not to be founded.

"A   Yes. Well, in general with the—where we find—where we find clear evidence of abuse, it varies between twenty-two percent and the highest month we've ever had was sixty-five percent.

"Then there's a category of uncertain, need more information and so on, that's between six and fifteen percent, typically around fifteen percent. And then the remainder is no evidence of abuse."

Defendant argues that this testimony was a comment on the credibility of the child because the jury could infer, from the fact that not all of the alleged sexual abuse cases evaluated by the C.A.R.E.S. Unit are determined to be well-founded, that the diagnosis of sexual abuse in this case must be valid. Although this general statistical information does seem to have little relevance regarding the issue of whether this claim of sexual abuse was valid, it was not an

impermissible comment on the credibility of the child.[3] The trial court did not err in overruling defendant's objection to the testimony on that basis.

Defendant's next assignment of error concerns the admission in evidence of a videotape of the child's interview with personnel at the C.A.R.E.S. Unit. During the interview, the child demonstrated the sexual abuse through the use of anatomically complete dolls. Defendant argues that the admission of the videotape was error because it is inadmissible hearsay.[4]

■ The trial court determined that the videotape was admissible under OEC 803(4), which provides an exception to the hearsay rule for statements that are made for purposes of medical diagnosis or treatment.[5] We review for errors of law. *State v. Verley*, 106 Or App 751, 809 P2d 723, *rev den* 311 Or 644 (1991). The trial court's factual determinations will be upheld if there is evidence in the record to support them. *State v. Barkley*, 315 Or 420, 427, 846 P2d 390 (1993).

■ To be admissible under OEC 803(4), a statement must: (1) be "made for purposes of medical diagnosis or treatment"; (2) describe or relate "medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof"; and (3) be "reasonably pertinent to diagnosis or treatment." OEC 803(4); *State v. Barkley, supra*; *State v. Moen*, 309 Or 45, 786 P2d 111 (1990). The trial court found that the child's statements were made for purposes of medical diagnosis or treatment. On direct examination, the child testified that she

---

[3] Because defendant did not object to this testimony on the grounds of relevance or prejudice under OEC 403, we decline to decide whether the testimony should have been excluded on those grounds.

[4] Defendant did not object to specific portions of the video tape, but objected to the tape as a whole.

[5] OEC 803(4) provides:

"The following are not excluded by Rule 802 [hearsay rule], even though the declarant is available as a witness:

"* * * * *

"(4) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause [or] external source thereof insofar as reasonably pertinent to diagnosis or treatment."

understood that her interview with the C.A.R.E.S. interviewer was being videotaped and would be viewed by Bays. The child's testimony indicates that she was aware that Bays was a medical doctor who was attempting to treat her for the sexual abuse:

"Q   Did you know that Dr. Bays was seeing you for medical treatment?

"A   Yes.

"* * * * *

"Q   And when you talked to the [interviewer], did you know that it was so that Dr. Bays could help you?

"A   Yes."

On cross-examination, the child said:

"Q   [W]hen you [saw Dr. Bays] you knew you were going for a medical diagnosis?

"A   Yes.

"Q   Now, who told you that?

"A   Jan Bays.

"Q   Okay. And she told you—did she tell you to be honest with her and tell her everything[?]

"A   Yes.

"Q   And you did that?

"A   Yes.

"Q   Because you were doing it for a medical diagnosis and treatment?

"A   Yes."

Defense counsel then asked the child about her conversations with the interviewer:

"Q   Okay. So when [the interviewer] told you you weren't going to do any medical exam or physical, did you think you were still there for medical diagnosis and treatment?

"A   No."

On redirect, the child said:

"Q   Okay. Now when you were—when you talked to [the interviewer], you knew that that was being video-taped?

"A   Yes.

"Q   Did you know that Dr. Bays was going to watch that video-tape?

"A   Yes.

"Q   Okay. And that she would use what you said on the video-tape to help you?

"A   Yes."

The trial court noted that there was conflicting testimony on this issue, but concluded that the more credible portion of the child's testimony was that she made her statements to the interviewer for purposes of medical diagnosis or treatment. We conclude that evidence in the record supports that finding. Therefore, the child's statements met the first requirement for admissibility under OEC 803(4).

During the videotaped interview, the child described the abuse using anatomically complete dolls. She also explained where and when the abuse occurred and identified defendant as the abuser. We conclude that the trial court could find on the basis of the record that the child's statements in the videotape were descriptions of the abuse that related to the cause or source of her pain, satisfying the second requirement of OEC 803(4).

Finally, the record supports the trial court's finding that the child's statements were "reasonably pertinent" to medical diagnosis or treatment. Bays testified that she relies on the information gathered in the interviews to diagnose and treat victims of child sexual abuse, and that she did so in this case. The courts in this state have recognized that identifying the abuser is crucial to appropriate treatment. *See, e.g., State v. Barkley, supra*.[6] The trial court did not err in admitting the videotaped interview, because the child's statements to the interviewer met all three requirements for admissibility under OEC 803(4).

■   Next, defendant assigns error to the trial court's denial of his motion for a new trial or, in the alternative, for a mistrial on the basis of prosecutorial misconduct during rebuttal argument. We review the trial court's denial of

---

[6] Defendant argues that the child's statements identifying him as her abuser are not pertinent to medical diagnosis or treatment. We have consistently held to the contrary. *See, e.g., State v. Vosika*, 83 Or App 298, 731 P2d 449, *clarified* 85 Or App 148, 735 P2d 1273 (1987).

defendant's motion for a mistrial for abuse of discretion. *State v. Nguyen*, 117 Or App 219, 843 P2d 990 (1992), *rev den* 315 Or 443 (1993).

■       Defense counsel made several objections during the state's rebuttal argument, many of which were sustained by the trial court. Defense counsel, however, did not move for a mistrial until after the jury returned its verdict. During closing arguments, defense counsel argued to the jury:

> "Was there one piece of evidence [the prosecution] could show that [defendant's] character showed that he was a child abuser? No. Is there anything in his history * * *?"

In rebuttal, the prosecutor said:

> "[Defense counsel] talked about how the state would have brought you evidence if the defendant was a child molester and therefore he must never have been because we didn't bring the evidence back. Members of the jury, I am not allowed to do that."

Defense counsel objected to the prosecutor's remark on the ground that it improperly suggested that the state had evidence of prior bad acts by defendant. The trial court sustained defendant's objection.[7] Because the trial court sustained defendant's objection to the prosecutor's remark, defendant's motion for a mistrial at a later time on that ground was untimely. It is incumbent on defendant to move for a mistrial at the time that the allegedly improper remarks were made. Accordingly, we decline to consider defendant's argument. *State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991).

■■       Also, during closing arguments, defense counsel argued to the jury that it should consider the fact that the state presented no evidence that the child was in therapy as an indication that the child was not sexually abused. In its rebuttal argument, counsel for the state told the jury that the child was in therapy. Defendant objected to the state's rebuttal argument asserting that it was improper testimony from the state's counsel, because the state introduced no evidence that the child was in therapy. The trial court overruled that objection. Because defendant's objection was overruled, his

---

[7] Although the record does not show whether the trial court immediately sustained defendant's objection, a later colloquy establishes that the trial court did, in fact, sustain the objection.

motion for a mistrial on the above ground was timely. *See State v. Lundbom*, 96 Or App 458, 773 P2d 11, *rev den* 308 Or 382 (1989). We conclude, however, that the trial court did not err in overruling that objection because there was evidence in the record indicating that the child was in therapy. Bays testified that her written report

> "can be used if [the child] gets into psychological treatment, it can be — the record can be passed on to the person who is giving treatment and that did happen in this case."

The trial court's denial of defendant's motion for a mistrial was proper.

Affirmed.

**DURHAM, J.,** concurring.

I join the court's opinion. I write separately to make clear that the court today affirms an exercise of trial court discretion to admit Dr. Bays' testimony that her "diagnosis was that [child] had been sexually abused." Defendant objected on the ground that that would be a comment on the child's credibility. The court correctly addresses only that issue.

Oregon authority on the issue is limited. For example, in *State v. Middleton*, 294 Or 427, 436 n 8, 657 P2d 1215 (1983), the court said:

> "Testimony concerning 'rape trauma syndrome,' a syndrome well described in the dissent in *Matter of Pittsburgh Action Against Rape*, 494 Pa 15, 428 A2d 126, 138-143 (1981), was admitted in *State v. Marks*, 231 Kan 645, 647 P2d 1292 (1982), when the issue in a rape trial was consent. The Minnesota Supreme Court, in *State v. Saldana*, 324 NW2d 227 (Minn 1982) and *State v. McGee*, 324 NW2d 232 (Minn 1982), reversed convictions for rape where the issue was consent, because of improperly admitted testimony concerning 'rape trauma syndrome.' In these cases, the expert described the syndrome, testified whether the witness fit the description of the typical victim, and gave an opinion that the victim had actually been raped. *The court noted that this type of testimony could be admissible in an 'unusual' case. The court said that a sexual assault on a child or mentally retarded victim would be examples of such unusual cases. State v. Saldana, supra*, 324 NW2d at 231." (Emphasis supplied.)

That comment and the court's general observation that "there is no bright line separating issues within the comprehension of the jurors from those that are not," 294 Or at 437, provide at least oblique support for the court's ruling here. The issue was raised again in *State v. Keller*, 315 Or 273, 844 P2d 195 (1993), but was not resolved.[1]

According to one commentator, the issue of the admissibility of an expert's diagnosis that a child has been sexually abused, has evenly divided the courts that have addressed it. McCord, *Syndromes, Profiles and Other Mental .Exotica: A New Approach to the Admissibility of Nontraditional Psychological Evidence in Criminal Cases*, 66 Or L Rev 19, 42 (1987) (hereinafter cited as McCord). The difficulty of the issue is more pronounced where, as here, the record lacks physical evidence of abuse. *See State v. Rimmasch*, 775 P2d 388, 399-403 (Utah 1989) (collecting cases and other authorities).

Courts should not discriminate against valid psychological evidence because the field of study is of recent origin. Expert evidence of a child's emotional condition involves an assessment of subjective symptoms that is not unlike medical opinion testimony about the presence of soft tissue injuries that courts admit routinely. On the other hand, the tests for admission of scientific evidence are complex and not easily satisfied. *See State v. Brown*, 297 Or 404, 417 and n 15, 687 P2d 751 (1984); McCord, *supra*, at 94 (discussing the necessity, reliability, understandability and importance of nontraditional psychological evidence, and how the court should balance those factors). *State v. Middleton* says:

> "[T]he trial court must first find that the witness is indeed an expert and is testifying to a subject that is a proper one for expert testimony. The court must also find the offered testimony is relevant." 294 Or at 437.

A proper foundation for testimony confirming a diagnosis of child abuse is essential because the evidence goes to the heart of the issue that the jury must decide. Our opinion

---

[1] In *Keller*, the trial court, over the defendant's objection, allowed Dr. Bays to testify about her child abuse diagnosis, but her answer, according to the Supreme Court, amounted "to testimony that the child was credible." 315 Or at 285. The court was not called upon to address other aspects of the defendant's objection, such as lack of foundation. *See State v. Brown*, 297 Or 404, 687 P2d 751 (1984).

confirms that the admissibility of that evidence is committed, in the first instance, to the sound discretion of the trial court, and does not attempt to influence the exercise of discretion on that question in future cases. I concur.