Argued and submitted November 26, 1997; resubmitted En Banc
November 19, 1998, affirmed February 17, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## GEORGE EDWARD TRAGER,
*Appellant.*

(9508-35239; CA A93245)

974 P2d 750

Andy Simrin, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Kathryn H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Chief Judge, and Warren, Edmonds, DeMuniz, Landau, Haselton, Armstrong and Wollheim, Judges.

EDMONDS, J.

Warren, J., concurring.

Landau, J., concurring.

## EDMONDS, J.

Defendant appeals his convictions on four counts of sexual abuse in the first degree, ORS 163.427. He assigns error to the admission of evidence of a medical doctor's diagnoses that the victims had been sexually abused based on the trial court's ruling that the state laid a proper foundation for scientific evidence under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984).[1] The state cross-assigns error to the trial court's ruling that evidence of a physician's diagnosis that a victim has been sexually abused is scientific evidence for which a foundation must be laid under *Brown*. We affirm.[2]

Defendant was convicted of sexually abusing two young girls, both of whom were under 14 years of age. The children reported the abuse to their mother. Subsequently, Dr. Linda Lorenz, a board certified pediatrician who specializes in child physical and sexual abuse with Child Abuse and Response Evaluations Services (CARES), evaluated the children.

---

[1] In *Brown*, the issue concerned the admissibility of the results of a polygraph examination. To assist trial courts in determining whether evidence was admissible under OEC 401 and 702, the court devised a test that includes the following factors:

"(1) The technique's general acceptance in the field;

"(2) The expert's qualifications and stature;

"(3) The use which has been made of the technique;

"(4) The potential rate of error;

"(5) The existence of specialized literature;

"(6) The novelty of the invention; and

"(7) The extent to which the technique relies on the subjective interpretation of the expert." *Brown*, 297 at 417.

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

OEC 702 provides:

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

[2] Defendant also assigns error on the ground that the trial court erred by imposing a Ballot Measure 11 sentence. All of defendant's challenges have been rejected by the Supreme Court or this court in prior cases.

Defendant moved *in limine* to exclude any expert testimony concerning the medical diagnoses of sexual abuse of the victims. The court ruled that the evidence was admissible, subject to a proper foundation being laid for it under the criteria set forth in *Brown*. During trial, the state made an offer of proof out of the presence of the jury to demonstrate that Lorenz's testimony satisfied the *Brown* criteria. During the offer, Lorenz testified that she has evaluated more than 150 children in the past six years and has attended conferences on the subject of child sex abuse. She testified that a large body of specialized literature exists about child abuse and that child sexual abuse has been an accepted medical diagnosis "since the late sixties [or] early seventies." Lorenz indicated that some symptoms or behaviors exhibited by children who are examined would be "supportive" of a diagnosis of sexual abuse; however, no single behavior is considered by itself to be indicative of sexual abuse.

In her trial testimony, Lorenz also explained that "[s]tandard procedures and protocols are well defined in the field." Lorenz also discussed her evaluations of the victims. Before examining the younger child, Lorenz reviewed the police report and the hotline report from the Office for Services to Children and Families. She learned that the child's disclosure had been spontaneous. The younger child presented a history of bad dreams and toileting problems, which, according to Lorenz, were indicative of stress. Lorenz then conducted a physical examination of the child. The child reported to Lorenz that defendant had abused her. Lorenz described how the child's demeanor changed dramatically when the child began to speak about the abuse. She later learned that the older child had witnessed defendant sexually abusing the younger child. Lorenz conducted a similar evaluation with regard to the older child. That child also told Lorenz that defendant had abused her and pointed to her genital area to clarify where the abuse occurred. Defendant denied touching either of the girls in a sexual manner. Subsequently, defendant was convicted.

On appeal, defendant argues:

"A 'diagnosis' of sexual abuse is a type of evidence that is subject to the requirements for admissibility of scientific

evidence. 'Child sexual abuse' is not generally accepted as a medical diagnosis. The record in this case indicates that the error rate for making such an assessment is not subject to empirical verification. The 'diagnosis' is completely dependent on the expert's subjective assessment. A 'diagnosis' of sexual abuse does not meet the requirements for admissibility of scientific evidence, and instead operates as a low-tech polygraph impermissibly assessing the credibility of a witness. The erroneous admission of the doctor's testimony requires reversal."

The following cases inform our consideration of defendant's argument. In *State v. Milbradt*, 305 Or 621, 756 P2d 620 (1988), an issue was whether a caseworker, who was not an expert on mentally retarded adults, could testify about the manner in which child victims ordinarily react to sexual abuse without meeting the *Brown* foundation requirements for scientific evidence. The defendant in *Milbradt* was charged with sexual offenses involving two mentally retarded adults. The caseworker was permitted to testify about the way in which child sex abuse victims typically react to sexual abuse. The court said:

"This case deals with two young adults who have had substantially different backgrounds and experiences and who are physically and mentally quite dissimilar to any child victims previously encountered by this witness. * * * We have set out in great detail in *Brown*, 297 Or at 409-18, the necessary foundation that must be laid for the introduction of scientific evidence. Without repeating what we said there, we direct the attention of anyone who is offering a form of scientific evidence to the procedures for admission set forth in *Brown*. * * *

"* * * We suggest that in future cases involving 'syndrome' testimony, full foundations be established, if indeed it can be shown that the so-called 'typical' reactions can be demonstrated to be either typical or reliable. * * *" *Milbradt*, 305 Or at 630-31.

Thus, the court implied that evidence of typical reactions is syndrome evidence that draws its convincing force from some scientific principle or empirical data.

We followed the court's holding in *Milbradt* in *State v. St. Hilaire*, 97 Or App 108, 775 P2d 876 (1989). In *St.*

*Hilaire*, the defendant assigned as error the trial court's admission of a police detective's testimony "that victims of sexual abuse rarely report the crime immediately, often minimize the activity and often are imprecise about the dates of occurrences." 97 Or App at 111. We agreed with the defendant's argument that "sex abuse syndrome" testimony is admissible only if an appropriate foundation is laid under *Brown* and *Milbradt*. We concluded that the state had laid a proper foundation for the detective's testimony and that his testimony was relevant to rebut the inference that the victim's testimony was not credible.[3]

In *State v. Lawson*, 127 Or App 392, 872 P2d 986, *rev den* 320 Or 110 (1994), where the defendant was charged with assault and criminal mistreatment of infants in her care, we again followed the holding in *Milbradt*. The defendant offered the testimony of a psychologist that she did not meet the profile of a child abuser. She also relied on psychological testing that indicated that she did not have the psychological characteristics of known, active child abusers. We explained:

> "[T]he type of evidence proffered by defendant in this case involves comparing an individual's behavior with the behavior of others in similar circumstances who have been studied in the past. This comparison evidence purports to draw its convincing force from scientific principles. It requires an expert witness who can explain the data and test results, and, if necessary, the scientific principles that are said to give the evidence its reliability or accuracy." *Lawson*, 127 Or App at 395.

In *Stafford*, the question was whether the testimony of a licensed clinical psychologist about "grooming" behavior of pedophiles was required to meet the requirements for scientific evidence. The lead opinion held that the evidence at issue was not "syndrome" or "profile" evidence that drew its convincing force from empirical data or an empirical study,

---

[3] However, in *State v. Stafford*, 157 Or App 445, 972 P2d 47 (1998), a plurality of this court held that "[t]o the extent that our decision in *St. Hilaire* can be read to stand for more than a rule of law regarding the admissibility of evidence concerning a victim's or a defendant's psychological condition, we disavow any such interpretation."

nor was such empirical information the source of the evidence's reliability or accuracy. Rather, the evidence was derived from the personal observations of an expert witness made in light of the witness's education, training and experience. The lead opinion held that the psychologist's testimony was relevant under OEC 401 and that, because the force of his testimony was not drawn from psychological testing or any other scientific methodology but was derived from personal observations made in light of his education, training and experience, it was not "scientific evidence."

In this case, Lorenz's testimony concerning the diagnoses of sexual abuse is not "syndrome" or "profile" evidence because it does not draw its convincing force from generalizations based on empirical data or an empirical study. Moreover, unlike in *Stafford*, Lorenz's testimony concerned differential diagnoses made in light of her education, training and experience after personally examining the victims. The weight or force of those diagnoses was derived from Lorenz's technical and specialized knowledge as a medical doctor. In that light, we conclude that Lorenz's testimony in this case was not "scientific evidence" within the meaning of *Brown*. The trial court erred in ruling to the contrary, but it correctly admitted Lorenz's testimony.

Affirmed.

**WARREN, J.,** concurring.

I agree with the majority that this is not "scientific evidence" within the meaning of *State v. Brown*, 297 Or 404, 687 P2d 751 (1984). I continue to believe that the *Brown* test should apply only when the methodology for gathering scientific evidence is novel. *State v. Stafford*, 157 Or App 445, 467, 972 P2d 47 (1998) (Warren, J., concurring).

**LANDAU, J.,** concurring.

At issue in this case is whether Dr. Lorenz's diagnosis that the victims had been sexually abused is admissible under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and its progeny. The majority concludes that the diagnosis is admissible because it is not "scientific evidence" and therefore is not even subject to the requirements of *Brown*. I agree with the majority's conclusion, but not with its reasoning. In my

view, *Brown* does apply; Lorenz's diagnosis is precisely the sort of evidence that is subject to the gatekeeping review of the courts. I would conclude, however, that the evidentiary requirements of *Brown* have been satisfied in this case and that, for that reason, Lorenz's testimony is admissible.

I begin with whether *Brown* applies. The majority concludes that *Brown* applies only to testimony that "draw[s] its convincing force from generalizations based on empirical data or an empirical study." 158 Or App at 405. According to the majority, in the context of testimony about patterns of behavior, only "syndrome" or "profile" evidence qualifies as "scientific" evidence that is subject to *Brown*. Because, in the majority's view, Lorenz's diagnosis was based on her "education, training and experience after personally examining the victims," and because her testimony cannot properly be regarded as "syndrome" or "profile" evidence, *Brown* does not apply. 158 Or App at 405. I think the majority misapprehends the scope of *Brown*.

In *Brown*, the Supreme Court held that before "scientific" evidence may be admitted, the trial court must

"identify and evaluate the probative value of the [proffered scientific] evidence, consider how [that evidence] might impair rather than help the factfinder, and decide whether truthfinding is better served by exclusion or admission."

*Brown*, 297 Or at 409. The court did not define precisely what is "scientific" evidence and, hence, is subject to that foundational inquiry. The Supreme Court addressed that problem in *State v. O'Key*, 321 Or 285, 291-93, 899 P2d 663 (1995), explaining:

"This court's definition of 'scientific' evidence in *Brown* recognizes that it is difficult to set a more definitive boundary between 'scientific' evidence and 'technical or other specialized knowledge,' which are the other types of evidence requiring expert proof. As Professors Mueller and Kirkpatrick state:

" 'Most expert testimony rests at least partly on science. In many areas the scientific underpinning is well established and the criteria set out in [Rules] 702 and 703 work well. The requirements are essentially three: The witness must qualify as an expert, his testimony

must be helpful ([Rule] 702), and he must have an adequate basis for what he says ([Rule] 703). Under these criteria an enormous amount of conventional scientific evidence is routinely admitted.' Christopher B. Mueller & Laird C. Kirkpatrick, *Modern Evidence* § 7.8, 990 (1995).

"Evidence perceived by lay jurors to be scientific in nature possesses an unusually high degree of persuasive power. The function of the court is to ensure that the persuasive appeal is legitimate. The value of proffered expert scientific testimony critically depends on the scientific validity of the general propositions utilized by the expert. * * * Propositions that a court finds possess significantly increased potential to influence the trier of fact as scientific assertions, therefore, should be supported by the appropriate scientific validation. * * *

"* * * * *

"We need not attempt precisely to distinguish 'scientific' from other types of expert testimony under the Oregon Evidence Code. For now, we hold that, in the absence of a clear case, a case for judicial notice, or a case of *prima facie* legislative recognition, trial courts have an obligation to ensure that proffered expert scientific testimony that a court finds possesses significantly increased potential to influence the trier of fact as 'scientific' assertions is scientifically valid."

(Footnotes omitted.) Thus, contrary to the majority's characterization of the law, whether proffered scientific testimony relies on a particular type of data, methodology, or technique is beside the point. And whether it can be given a particular label—"syndrome," "profile," or otherwise—is irrelevant. Under *Brown* and *O'Key*, the determinative consideration is whether the testimony is such that juries likely will *perceive* it to have a basis in science and thereby regard it as having correspondingly enhanced persuasive force. *Id.*

Our own previous cases applying *Brown* bear out the point. In *State v. St. Hilaire*, 97 Or App 108, 113, 775 P2d 876 (1989), for example, the expert witness testified about the "typical behavior of sexually abused children," based on his observations in interviews of a number of victims. No particular methodology, technique, or formula was implicated. The

expert testified about what he had observed in light of his training and experience. We nevertheless held that *Brown* applied.

Similarly, in *State v. Lawson*, 127 Or App 392, 395, 872 P2d 986 (1994), we held that expert testimony concerning the extent to which defendant's behavior was consistent with traits the expert had observed in many other child abusers was scientific evidence that implicated the requirements of *Brown*. In that case, we emphasized that the substance of the testimony, not the particular label appended to it, controls:

> "Whether it is labeled a 'syndrome' or a 'profile,' the type of evidence proffered * * * in this case involves comparing an individual's behavior with the behavior of others in similar circumstances who have been studied in the past."

*Id.*

In my view, Lorenz's testimony in this case is not materially different from the testimony at issue in both *St. Hilaire* and *Lawson*. Lorenz compared the behavior of the victims in this case with the behaviors of other victims who had been studied in the past to arrive at her diagnoses. That is precisely the sort of testimony that we previously have held implicates the foundational requirements of *Brown*. It should not be treated differently in this case.

I turn, then, to the requirements of *Brown*. In *Brown*, the Supreme Court explained that, in evaluating the foundation for the admissibility of scientific evidence, trial courts must consider the following factors:

"(1)  The technique's general acceptance in the field;

"(2)  The expert's qualifications and stature;

"(3)  The use which has been made of the technique;

"(4)  The potential rate of error;

"(5)  The existence of specialized literature;

"(6)  The novelty of the invention; and

"(7)  The extent to which the technique relies on the subjective interpretation of the expert."

297 Or at 417. The factors are designed to serve as a guide in evaluating the evidence. *Id.* They are not, however, a checklist; not all factors must be satisfied for the evidence to be admissible. *Id. See also St. Hilaire*, 97 Or App at 112 ("The factors are guidelines, not a checklist.").

In this case, there is no question but that a diagnosis of child abuse is generally accepted in the field, that Lorenz was qualified to give testimony about that diagnosis, that there is a considerable body of specialized literature on the subject, and that the diagnosis is not a novel "invention." Defendant's principal objections are that the diagnosis of child abuse is not subject to a known error rate and is inherently subjective in nature. Both objections, however, may be stated of many recognized medical diagnoses. Moreover, as the cases make clear, scientific evidence is not rendered inadmissible merely because it cannot satisfy one or more of the factors mentioned in *Brown*.

In short, I would conclude, therefore, that Lorenz's testimony is "scientific" evidence subject to the foundational requirements of *Brown*, but I also would hold that those foundational requirements were satisfied in this case. I therefore concur in the result of the majority's decision, but not in its rationale.

Deits, C. J., and Armstrong and Wollheim, JJ., join in this concurring opinion.