Argued and submitted December 6, 2005, affirmed October 11, 2006,
petition for review denied January 23, 2007 (342 Or 299)

## STATE OF OREGON,
*Respondent,*

*v.*

## WILLIAM RICHARD CLEMENS,
*Appellant.*

### 03FE-0016; A124674

145 P3d 294

Andy Simrin argued the cause and filed the briefs for appellant.

Katherine Waldo, Senior Assistant Attorney General, argued the cause for respondent. With her on the briefs were

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge,* and Brewer, Chief Judge, and Yraguen, Senior Judge.**

YRAGUEN, S. J.

---

\* Edmonds, P. J., *vice* Wollheim, J.

\*\* Yraguen, S. J., *vice* Ceniceros, S. J.

## YRAGUEN, S. J.

Following a trial to the court, defendant was convicted of two counts of sexual abuse in the first degree, ORS 163.427, unlawful sexual penetration in the second degree, ORS 163.408, two counts of sodomy in the second degree, ORS 163.395, sodomy in the first degree, ORS 163.405, and misdemeanor assault in the fourth degree, ORS 163.160. On appeal, defendant raises five assignments of error. Four of those assignments do not merit further discussion. We write only to address defendant's argument that the trial court erred in admitting the opinion of a police officer because that opinion constituted scientific evidence for which an adequate foundation had not been laid. At trial, the court overruled defendant's objection and admitted the officer's statement after determining that the officer's opinion did not constitute scientific evidence, but rather was based on his own experience. We review the trial court's conclusion that the officer's statement did not constitute scientific evidence for errors of law, *State v. Marrington*, 335 Or 555, 561-63, 73 P3d 911 (2003), and affirm.

■   "We state the facts and review the evidence in the light most favorable to the state." *Id.* at 557. Defendant and his wife are the biological grandparents of the victim. The victim and her older brother were placed with foster parents after their mother was injured in an automobile accident. Soon thereafter, the children were transferred to the custody of defendant and his wife. Several years later, defendant and his wife adopted the children. Defendant began to sexually abuse the victim when the latter was seven or eight years old. That abuse persisted until the victim reported it to authorities at the age of 15. The abuse took place in the victim's bedroom in the early morning hours before others in the household were awake, in the toolshed, and in defendant's own bedroom when all others, including defendant's wife, were not at home. Over the time period, defendant regularly touched the victim's breasts and vagina with his hands and mouth, penetrated her vagina with his fingers, and required the victim to hold his penis. In at least one instance, defendant required the victim to place his penis in her mouth. When the victim was 15 years old, she began to resist that

abuse. On one occasion, when the victim asked defendant not to touch her anymore, defendant hit her on the arm. The victim's brother later noticed the resulting bruise and pressed the victim to tell him about it. The victim then revealed defendant's abuse, including the sexual abuse, to her brother. The brother took the victim to authorities at the Department of Human Services, after which the victim reported the sexual abuse to an investigating officer and to a physician at a child abuse assessment center.

Defendant waived his right to a jury and received a bench trial. The court found defendant guilty of the one misdemeanor and all six felony charges brought in the state's amended indictment.

■ On appeal, defendant raises again an argument that he advanced to the trial court, namely, that the court erred in admitting an officer's opinion—that the victim's statement was generally consistent with the nonchronological reporting patterns of child abuse victims—because it constituted scientific evidence for which a proper foundation had not been laid pursuant to *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995), and *State v. Brown*, 297 Or 404, 687 P2d 751 (1984). The state responds that the statement admitted by the court was not scientific evidence at all, but rather lay opinion based on the witness's personal experience.[1]

In order to evaluate the parties' arguments, we set out the disputed statement in its fuller context. On cross-examination, the investigating officer, Robles, testified that, at his July 2002 interview, the victim stated that the last incident of oral sodomy had occurred one month before. On redirect, the state sought to clarify whether the sexual abuse ended in June 2002, or continued up to the point of the interview:

---

[1] The state also argues, in the alternative, that if admission of the officer's opinion was error, that error was harmless because the subject matter of the disputed statement pertained to a matter that was, at most, remote from any central factual issue in the case; therefore, its admission, according to the state, could not have affected the verdict. Because we conclude that the trial court did not err in admitting the disputed statement, we do not consider the state's harmless error argument.

"Q: Your—there was a question about the grand-father's mouth touching the victim. That was on line 15—excuse me, line 16 on page 15, advised that that happened a month ago. Did she indicate to you that any other kind of abuse was still continuing in the house during those 30 days?

"A: Yeah, she did. And the thing that's kind of difficult in these types of matters is when it's repeated sexual abuse that's happened over a prolonged period of time, when they're recalling this generally they recall the most significant events. And they might go back—

"[Defense counsel]: Objection, Your Honor, move to strike that. Without a proper foundation of his, you know, psychology training or medical training, he's making a medical determination about—

"[Court]: I thought he was referring to his experience. And he—I think he testified he's done, what a hundred and fifty or two hundred of these.

"[Defense counsel]: Okay. Well, my—

"[Court]: No, I think he can describe his own experience.

"[Defense counsel]: Just so the Court understands my objection, I think testimony such as that is scientific evidence and is subject to a proper a—Brown/O'Key foundation, and I don't think they've laid that. So I think it's in—

"[Court]: Okay. Well, I—it doesn't—seems to me one person's experience is probably not a science, so I'll—I'll overrule the objection.

"Go ahead please.

"The Witness: Okay. And just continuing on that, I have found that that—that it's difficult for them to articulate in their—during their statement when they go back and forth, in terms of when you interview—I try to interview them chronologically, for it to make sense to me and—and to others as I prepare my report. However, they'll bounce back and forth as far as different incidences they're remembering and recalling.

"So, she did talk about that specific incident, or the last—that was the last time that that type of contact happened. But she also talked about other contact that had

happened since then and prior to then, and often some of those don't—don't come out in chronological order. It comes out as they're remembering, as we're discussing as well, during the course of the interview."

The record does not clearly establish whether Robles intended by his statements to do more than explain why he tends to take extra care, as a matter of practice, to conduct his interviews with children reporting sexual abuse, including the victim here, in a pointedly chronological fashion. In particular, Robles's generalization about the nonchronological reporting patterns of child abuse victims did not respond to any question or issue before the court at the time of his testimony. Still, regardless of the witness's intent, we cannot entirely rule out the possibility that the disputed statement may have served to bolster the victim's credibility, a fact of consequence to the determination of the present case.[2]

We note that the facts of this case distinguish it from the line of cases dealing with so-called "child abuse syndrome" evidence. *See State v. Milbradt*, 305 Or 621, 631, 756 P2d 620 (1988) ("[C]ases involving 'syndrome' testimony [require that] full foundations be established[.]"). In particular, here, Robles's testimony did not suggest that the victim's allegations against defendant were rendered more credible because the nonchronological nature of the victim's account to police was consistent with the reporting patterns of confirmed victims, or even of children reporting abuse. *Cf. State v. St. Hilaire*, 97 Or App 108, 111, 775 P2d 876 (1989) (Officer's statement that victim's behavior is typical of young abuse victims "provided the jury with an alternative * * * explanation for her apparent lack of recall."). Indeed, the disputed testimony did not even suggest that the nonchronological nature of the victim's initial report of abuse differed from the manner by which people generally report their experiences.

---

[2] In issuing its ruling, the trial court declined to comment on the evidence except to stress that, in the particular circumstances of this case, "only two people were present and only two people can give direct testimony as to what occurred. And I conclude that, while there are credibility issues as to both of those people * * *, I conclude that I don't have a reasonable doubt."

To consider whether the disputed testimony here was scientific evidence inadmissible without an adequate foundation under OEC 702,[3] we first must decide whether the disputed testimony constituted scientific evidence. In *Marrington*, the Oregon Supreme Court established that the key question to be resolved in determining whether proffered testimony is "scientific," and thus requires a special foundation, is "whether the expert's assertions possess significantly increased potential to influence the trier of fact as scientific assertions." 335 Or at 562 (internal quotation marks omitted). Citing its earlier opinion in *Brown*, 297 Or at 407, the court noted that "the term 'scientific' * * * refers to evidence that draws its convincing force from some principle of science, mathematics and the like." *Marrington*, 335 Or at 561. In *Marrington*, the state offered the expert testimony of a psychologist that the alleged victim displayed "a very prevalent characteristic of abused children in her delayed reporting." *Id.* at 558. Among other credentials, that witness testified that she had "undergraduate and postgraduate degrees in the field of psychology, a behavioral science" and claimed "that her knowledge is based on studies, research, and the literature in the field." *Id.* at 563. The court noted that

"[a]n expert like [the witness in *Marrington*], who has a background in behavioral sciences and who claims that her knowledge is based on studies, research, and the literature in the field, announces to the factfinder that the basis of her testimony is 'scientific,' *i.e.*, is grounded on conclusions that have been reached through application of a scientific method to collected data."

*Id.* at 563-64.

In contrast to *Marrington*, the record here establishes that Robles had relevant training and experience in the area of child sexual abuse investigations, but not that he had any relevant or specialized education or knowledge in

---

[3] OEC 702 provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as a expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

the field of psychology and child behavior. The disputed portion of his testimony, moreover, did not "involve the vocabulary of scientific research." Nothing in Robles's testimony suggested to the court that his opinions were "grounded on conclusions that have been reached through application of a scientific method to collected data." Further, by its comments the court made clear that it was aware of the difference between testimony based on personal experience, such as that provided by Robles, and testimony that is scientific in nature.[4] Based on the record as a whole, then, we conclude that Robles's disputed statement retained no "increased potential" to influence the trier of fact as a scientific assertion. We hold, therefore, that the trial court did not err in concluding that the disputed testimony was not scientific evidence.

Affirmed.

---

[4] As noted, the trial court expressly admitted Robles's statement as one based on his experience. Although the trial court did not cite the statute, it appears that the court was admitting the statement under OEC 701. OEC 701 allows lay witness testimony "in the form of opinions or inferences" only where those are "(1) [r]ationally based on the perception of the witness; and (2) [h]elpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Because the question was not raised as an assignment of error on appeal, we do not consider whether the disputed statements were properly admitted under OEC 701.