Argued and submitted April 29, 2021; decision of Court of Appeals reversed; judgment of circuit court reversed in part and affirmed in part, and case remanded to circuit court for further proceedings March 31, 2022

# MELTON J. JACKSON JR.,
*Petitioner on Review,*

*v.*

# Steve FRANKE,
Superintendent,
Two Rivers Correctional Institution,
*Petitioner on Review.*

(CC CV080485) (CA A152333) (SC S067884)

507 P3d 222

In post-conviction, petitioner claimed that his trial counsel provided constitutionally inadequate and ineffective assistance by failing to object to admission of an expert's diagnosis of child sexual abuse in the absence of physical evidence of abuse. Although that objection would have been contrary to controlling Court of Appeals precedent at the time, this court later held that such testimony is inadmissible in that circumstance. In response to the superintendent's motion for summary judgment, petitioner offered evidence that other criminal defense lawyers at the time of petitioner's trial were preserving challenges to the admission of such testimony and recommending that other criminal defense lawyers do the same. The post-conviction court excluded that evidence as irrelevant and granted the superintendent's motion for summary judgment, and the Court of Appeals affirmed. *Held*: (1) Raising an objection to the admission of the expert's diagnosis was not so obviously correct based on the state of the law at the time of trial that trial counsel was obligated to object; (2) evidence that some other lawyers were objecting to that type of testimony did not create an issue of material fact to support petitioner's theory that, under then-prevailing professional norms, any attorney exercising reasonable skill and judgment would have made the objection; but (3) the evidence did create genuine issues of material fact as to whether petitioner's lawyer's failure to object reflected the lawyer's failure to adequately familiarize himself with the state of the law to the extent required under the circumstances of the case.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Andy Simrin, Andy Simrin PC, Portland, argued the cause and filed the brief for petitioner on review.

_____
* Appeal from Umatilla County Circuit Court, Rick J. McCormick, Judge. 304 Or App 503, 467 P3d 779, *rev allowed*, 367 Or 220 (2020).

Rebecca M. Auten, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Flynn, Nelson, and Garrett, Justices, and Baldwin and Nakamoto, Senior Judges, Justices pro tempore.**

FLYNN, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.

Garrett, J., dissented and filed an opinion, in which Balmer, J., joined.

_____

** Duncan and DeHoog, JJ., did not participate in the consideration or decision of this case.

**FLYNN, J.**

At issue in this post-conviction case is petitioner's attempt to prove that his criminal trial counsel provided constitutionally inadequate and ineffective assistance by failing to object that an expert diagnosis of child sexual abuse was inadmissible in the absence of corroborating physical evidence. Although the objection would have been contrary to controlling Court of Appeals precedent at the time of petitioner's 2001 criminal trial, this court later held that the rules of evidence require exclusion of a diagnosis of sexual abuse if it is not based on physical evidence, effectively overruling the Court of Appeals precedent. *State v. Southard*, 347 Or 127, 142, 218 P3d 104 (2009). In an attempt to survive summary judgment, petitioner offered evidence that some criminal defense attorneys in 2001 viewed the Court of Appeals precedent as vulnerable, were raising the kind of challenge to sexual abuse diagnoses that ultimately succeeded in *Southard*, and were recommending that practice to other criminal defense attorneys. Petitioner contends that the evidence would allow him to establish that the exercise of reasonable skill and judgment obligated his attorney to raise a similar objection, or at least that his attorney's failure to raise the argument was the product of a failure to adequately prepare and familiarize himself with the state of the law.

The case is before us for a second time; we have already determined that counsel's failure to raise a *Southard*-type argument caused prejudice to petitioner—"that there was more than a mere possibility that, if the issue had been preserved and adequately presented, this court would have allowed review and reversed his conviction." *Jackson v. Franke*, 364 Or 312, 331, 434 P3d 350 (2019) (*Jackson III*). We allowed review a second time to consider whether petitioner's evidence permits reasonable inferences of fact that, if proved, would establish that petitioner's trial counsel failed to exercise reasonable profession skill and judgment—the other element that petitioner must prove to establish his claim of constitutionally inadequate and ineffective assistance. *See Johnson v. Premo*, 361 Or 688, 699, 399 P3d 431 (2017) (describing elements of claim).

Both the post-conviction court and the Court of Appeals held that petitioner's claim fails as a matter of law and that no evidence can change that result. As we explain below, we disagree in part. We agree with the Court of Appeals that the argument that ultimately succeeded in *Southard* was not so obviously correct in 2001 that the exercise of reasonable professional skill and judgment obligated attorneys to raise the argument, and petitioner's evidence does not permit a different conclusion. But we disagree that petitioner's claim can be resolved on summary judgment. We conclude that a lawyer's failure to raise an important and ultimately correct legal argument may constitute inadequate assistance of counsel in a particular case even where the argument was not so obviously correct that a lawyer exercising reasonable professional skill and judgment would have been obligated to raise it. We also conclude that the evidence creates genuine issues of material fact that—if resolved in petitioner's favor—could establish that the failure by petitioner's attorney to raise a *Southard*-type challenge to the sexual abuse diagnosis was the product of an unreasonable failure to investigate and familiarize himself with the state of the law to the extent appropriate to the nature and complexity of the case; that, as a result, petitioner's attorney was not equipped to exercise professional judgment and represent defendant in an informed manner; and, thus, that petitioner was denied the constitutionally adequate and effective representation to which he was entitled. Accordingly, we hold that the lower courts incorrectly concluded that petitioner's evidence was not relevant and incorrectly granted summary judgment to the superintendent.

## I.  BACKGROUND

### A.  *Introduction to the Legal Standards*

As we have previously explained, "[p]ost-conviction relief is warranted when there has been a 'substantial denial' of 'rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void.'" *Lichau v. Baldwin*, 333 Or 350, 358, 39 P3d 851 (2002) (quoting ORS 138.530(1)(a)). At issue here is the right to counsel guaranteed by Article I, section 11, of the Oregon Constitution and

the Sixth Amendment to the United States Constitution (as incorporated through the Fourteenth Amendment).[1] Under both provisions, "'the defendant's right is not just to a lawyer in name only, but to a lawyer who provides adequate assistance.'" *Montez v. Czerniak*, 355 Or 1, 6, 322 P3d 487, *adh'd to as modified on recons*, 355 Or 598, 330 P3d 595 (2014) (quoting *State v. Smith*, 339 Or 515, 526, 123 P3d 261 (2005)).[2] Thus, we have held that a petitioner seeking post-conviction relief proves a violation of the right to counsel, under either constitutional provision, by showing "that counsel failed to exercise reasonable professional skill and judgment, and that the petitioner suffered prejudice as a result of counsel's inadequacy." *Johnson*, 361 Or at 699.[3]

Only the first element remains at issue in this case—whether petitioner's counsel exercised reasonable professional skill and judgment in relation to his failure to argue that an expert diagnosis of sexual abuse should be excluded. The question of reasonableness is "a legal issue,"

---

[1] Article I, section 11, of the Oregon Constitution provides, as pertinent:

"In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]"

The Sixth Amendment to the Constitution of the United States provides, as pertinent:

"In all criminal prosecutions, the accused shall enjoy the right *** to have the Assistance of Counsel for his defence."

[2] We have described the two standards as "functionally equivalent," although we interpret and apply Article I, section 11, "independently of the United States Supreme Court's interpretation of the Sixth Amendment." *Montez*, 355 Or at 6. Except where the parties identified a possible distinction between the standards that apply to this argument under Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution, we discuss the state and federal constitutional arguments together. *See Montez*, 355 Or at 27 n 7 (describing that approach).

[3] The superintendent characterizes the applicable standard as whether "all reasonable attorneys" would have made the objection. The Court of Appeals has also identified the relevant standard that way in prior cases. *See, e.g.*, *Behrle v. Taylor*, 307 Or App 126, 143, 476 P3d 475 (2020), *rev den*, 36 Or 709 (2021) (counsel's performance was constitutionally deficient if "all reasonable trial counsel" would have made the objection). But the question, as we have repeatedly phrased it, is whether the petitioner's attorney "'failed to exercise reasonable professional skill and judgment.'" *Montez*, 355 Or at 7 (quoting *Lichau*, 333 Or at 359). The distinction may be subtle, but the superintendent's standard unduly focuses the inquiry on the attorney, rather than on the particular action or omission of an attorney who may otherwise be a "reasonable attorney." As we emphasized in *Lichau*, each decision a lawyer makes "itself must be a reasonable exercise of professional skill and judgment." 333 Or at 360.

but "the historical circumstances that underlay" the challenged act or omission "present factual issues for the trial court." *Pereida-Alba v. Coursey*, 356 Or 654, 663, 342 P3d 70 (2015). With respect to the factual issues, because this case reaches us as an appeal from the grant of summary judgment against petitioner, the relevant standard of review requires us to view the pleadings and the evidence "in the light most favorable to" petitioner—"the non-moving party." *Eklof v. Steward*, 360 Or 717, 729, 385 P3d 1074 (2016). We describe the record in light of that standard.

B.   *Proceedings in the Underlying Criminal Case*

In 2001, petitioner was charged with one count of first-degree sodomy and two counts of first-degree sexual abuse, based on allegations that he had sexually abused his son, M, who was 10 years old at the time of trial. The case came down to a credibility contest between M, who testified to the abuse at trial, and petitioner, who testified and denied the abuse at trial. The theory of the defense was that M had potential motives to lie, and petitioner's counsel cross-examined various witnesses about those motives. The state bolstered its case with testimony from Steinberg, a pediatrician who had evaluated M at a child abuse assessment center. Steinberg found no physical signs of abuse when she examined M. But she testified that other considerations, including M's medical, social, and behavioral history, as well as his statements and demeanor during an interview at the center, caused Steinberg to arrive at a "medical diagnosis * * * that this was highly concerning for sexual abuse."

At the time of petitioner's criminal trial, controlling precedent from the Court of Appeals held that a doctor's diagnosis of sexual abuse was admissible, even in cases in which there was no corroborating physical evidence of abuse. *State v. Trager*, 158 Or App 399, 402-03, 405, 974 P2d 750, *rev den*, 329 Or 358 (1999) (rejecting argument that diagnosis of sexual abuse was scientific evidence and inadmissible because it "operates as a low-tech polygraph impermissibly assessing the credibility of a witness" (internal quotation marks omitted)); *State v. Wilson*, 121 Or App 460, 463-66, 855 P2d 657, *rev den*, 318 Or 61 (1993) (holding that absence of physical evidence did not make diagnosis of sexual abuse

an improper "direct comment" on credibility). Despite those Court of Appeals decisions, some members of the criminal defense bar at the time believed that this court's case law would require the exclusion of a diagnosis of sexual abuse in the absence of physical evidence, and they predicted that this court would eventually allow review of the issue and hold that such diagnoses are inadmissible. In anticipation of that predicted eventuality, appellate lawyers from the Office of Public Defense Services (OPDS) were recommending at continuing legal education seminars and in postings to the listserv for members of the Oregon Criminal Defense Lawyers Association (OCDLA) that criminal defense attorneys around the state challenge a diagnosis of sexual abuse made in the absence of physical evidence in order to preserve the issue for appellate review.

Petitioner's criminal defense counsel, however, was not aware of those recommendations (or aware of *Trager* at all). He had been appointed less than a month before petitioner's trial date and recognized that Steinberg's testimony "would carry great weight," but he "could not think of any possible objection to her diagnosis," and he did not object. The judge, sitting as factfinder, acquitted defendant of the sexual abuse charges but found him guilty on the charge of first-degree sodomy. On direct appeal, the Court of Appeals affirmed, and this court denied review. *State v. Jackson*, 208 Or App 757, 145 P3d 1145 (2006), *rev den*, 342 Or 473 (2007) (*Jackson I*).

C.   *Post-Conviction Proceedings*

Eight years after petitioner's criminal trial, and two and one-half years after this court denied review of petitioner's direct appeal, this court decided *Southard*, and the legal landscape shifted. *See Jackson III*, 364 Or at 318 (describing timing). We held in *Southard* that a medical diagnosis of sexual abuse is scientific evidence and meets the requirements for admission of scientific evidence. 347 Or at 139. But we also held that a sexual abuse diagnosis that is not based on physical evidence and that "does not tell the jury anything that it could not have determined on its own" is inadmissible under OEC 403, because it presents a "great" risk of unfair prejudice that "substantially outweighs the

minimal probable value of the diagnosis." *Southard*, 347 Or at 140-42. As we explained in *Jackson III*, that conclusion "effectively overruled" what had been controlling Court of Appeals precedent at the time of petitioner's trial on the criminal charges and established that "a medical diagnosis of sexual abuse such as that at issue in this case was not admissible." 364 Or at 318.

After *Southard* was decided, petitioner amended his pending petition for post-conviction relief to add an allegation that his criminal trial attorney had provided constitutionally inadequate and ineffective assistance of counsel by "fail[ing] to object to a diagnosis relating to sexual abuse in the absence of physical corroborating evidence." The superintendent moved for partial summary judgment against that claim for relief, arguing that counsel had acted reasonably as a matter of law, given the state of the law at the time of petitioner's trial. In opposition to that motion, and in support of his own cross-motion for partial summary judgment on the claim, petitioner offered an affidavit from the attorney who had handled the appeal of his underlying case. That attorney averred that she had been aware that challenges were being brought to the admissibility of sexual abuse diagnoses when there was no physical evidence and that she would have challenged Steinberg's diagnosis on appeal had petitioner's criminal trial counsel preserved the issue. Petitioner also offered an affidavit from his trial counsel stating that he had made no "strategic or tactical" decision in failing to object to Steinberg's testimony but simply "was not aware that there was a potentially legitimate legal objection."

In addition, petitioner submitted affidavits from other criminal defense attorneys, who recited facts and opinions that—petitioner contended—supported his claim that his trial counsel had failed to exercise reasonable professional skill and judgment with respect to Steinberg's testimony. The affidavits described what other criminal defense attorneys knew and were recommending to each other around the time of petitioner's trial with regard to the potential value of challenging sexual abuse diagnoses of the type that Steinberg had offered. They also offered

numerous opinions, including about the meaning of case law, how "any competent" attorney must practice criminal law, and the merits of the superintendent's motion for summary judgment.

The trial court excluded the affidavits as irrelevant and concluded that, given the state of the law in 2001, petitioner could not prove either that his attorney failed to exercise reasonable professional skill and judgment or that the failure to object to Steinberg's testimony caused petitioner to suffer prejudice. Accordingly, the trial court granted the superintendent's motion for partial summary judgment and denied petitioner's motion. The court then conducted a hearing on the remaining claims of inadequate assistance and denied those claims on the merits.

D.   *Appeal to the Court of Appeals*

Petitioner appealed, contending that the post-conviction court erred in excluding the lawyer affidavits and in its summary judgment rulings. Initially, the Court of Appeals affirmed based entirely on its conclusion that petitioner's evidence failed to create a genuine issue of material fact with regard to whether he was prejudiced by his lawyer's failure to object to the sexual abuse diagnosis. *Jackson v. Franke*, 284 Or App 1, 15-16, 392 P3d 328 (2017) (*Jackson II*). As explained above, this court reversed that decision, also deciding only the narrow issue of prejudice.[4] *Jackson III*, 364 Or at 331. In doing so, we observed that petitioner had "presented uncontradicted affidavits that his appellate counsel would have raised the issue and properly presented it to this court in a petition for review," and that "there is little doubt that this court would have found the challenged evidence inadmissible had we decided petitioner's case." *Id*. at 325. Thus, we focused on the only issue that was seriously in dispute: "whether this court would have allowed review in petitioner's case at all," had the diagnosis issue been preserved. *Id*. And we identified several "objective

---

[4] In *Jackson III*, this court assumed, without deciding, the issue presented here today: whether a lawyer exercising reasonable professional skill and judgment would have objected to the medical diagnosis of sexual abuse, notwithstanding existing Court of Appeals decisions holding that that evidence was admissible. 364 Or at 321.

indicators" that this court would have allowed review, including that, "although *Trager* may have been controlling, there was tension between that decision and several decisions from this court" and, most importantly, that this "court allowed the petition in *Southard* just over a year after petitioner's petition for review was denied." *Jackson III*, 364 Or at 327, 329-30. Ultimately, we concluded that "[n]o one could have predicted with any certainty whether this court would have allowed review in petitioner's case" but that "there was more than a mere possibility that, if the issue had been preserved and adequately presented, this court would have allowed review and reversed his conviction." *Id.* at 331.

On remand, the Court of Appeals again affirmed. *Jackson v. Franke*, 304 Or App 503, 467 P3d 779 (2020) (*Jackson IV*). The court first addressed whether the excluded lawyer affidavits were even potentially relevant. *Id.* at 510-15. As the court explained, petitioner was contending that the post-conviction court had erroneously treated the stricken affidavits as offering "expert" opinion when they actually averred "to the 'fact' of the 'prevailing professional norms' in Oregon in 2001." *Id.* at 512. But the court observed that the stricken affidavits all offered at least some expert opinion testimony that "the post-conviction court did not err in striking" and, "[i]ndeed," that "petitioner ha[d] not developed any argument as to how the court erred in striking the opinion portions of the stricken affidavits." *Id.* at 512-15. The court concluded that only one of the affidavits offered "fact averments" that were even "potentially relevant" under OEC 401 to proving whether objecting to a diagnosis like Steinberg's was a prevailing professional norm in Oregon in 2001. *Jackson IV*, 304 Or App at 513-14. But the court ultimately concluded that the question of whether counsel exercised reasonable professional skill and judgment in failing to object to Steinberg's diagnosis was "particularly well-suited to resolution based solely on the state of the law at the time of the representation," without reference to affidavits concerning prevailing professional norms. *Id.* at 517, 522.

The court reasoned that "[i]t is an uphill battle at best to argue that a lawyer performed deficiently to the point of constitutional inadequacy and ineffectiveness by

not objecting to the admission of evidence that was unequivocally admissible under controlling case law that existed at the time of the representation." *Id.* at 521. The court concluded that Steinberg's diagnosis was admissible under controlling Court of Appeals precedent in 2001 and that those decisions were not "'so obviously' wrong that every competent defense attorney in Oregon would have realized they were wrong and sought to preserve an objection for eventual Supreme Court review." *Id.* at 521-22 (quoting *Burdge v. Palmateer*, 338 Or 490, 497-98, 112 P3d 320 (2005)) (citation omitted). On that basis, the court held as a matter of law that petitioner's "trial counsel did not perform deficiently at petitioner's 2001 trial in failing to foresee" this court's eventual holding in *Southard. Jackson IV,* 304 Or App at 522. Accordingly, the court again affirmed the grant of summary judgment to the superintendent and the denial of summary judgment to petitioner. *Id.* at 523. This court granted petitioner's petition for review to consider whether the Court of Appeals correctly concluded that the failure by petitioner's trial counsel to challenge Steinberg's diagnosis was reasonable as a matter of law given the state of case law existing in 2001.

## II.   DISCUSSION

As set out above, the procedural posture of the case narrows the question on review to whether there are genuine issues of material facts from which petitioner could establish that his trial counsel failed to exercise reasonable professional skill and judgment in relation to his failure to argue that Steinberg's sexual abuse diagnosis should be excluded. Petitioner urges us to reverse the decision of the Court of Appeals for what we understand to be two alternative reasons. Primarily, petitioner contends that the state of the law in 2001, at least in combination with his evidence of "prevailing professional norms," establishes that any lawyer exercising reasonable skill and judgment in 2001 would have objected to a diagnosis of sexual abuse in the absence of physical evidence. Under that theory, petitioner would be entitled to judgment as a matter of law on his claim for post-conviction relief. Petitioner alternatively contends that his counsel in particular failed to exercise reasonable professional skill and judgment because his failure to raise the

objection was the product of an unreasonable failure to prepare and familiarize himself with the state of the law. Under that theory, petitioner urges us to conclude that evidence of the knowledge and practices of other attorneys is relevant and—if viewed in the light most favorable to petitioner—permits reasonable inferences of facts that would establish a failure on the part of petitioner's counsel in particular to exercise reasonable professional skill and judgment in failing to object to Steinberg's diagnosis of sexual abuse. Although we reject petitioner's primary argument, we agree with his alternative argument.

A. *Whether, Based on the State of the Law Alone, Petitioner Established that His Trial Counsel Failed to Exercise Reasonable Professional Skill and Judgment*

There is no dispute that, under *Southard*, a diagnosis of sexual abuse like that offered by Steinberg would now be inadmissible. But the fact that this court eventually resolved that long-disputed issue in the way that other attorneys had anticipated does not establish that petitioner's attorney failed to exercise reasonable skill and judgment when he failed to make the argument in 2001. *See Burdge*, 338 Or at 497 (explaining that it was incorrect to "assume that, because a court eventually recognized a statute's ambiguity, any lawyer exercising reasonable professional skill and judgment would have done the same"). We have routinely emphasized that, "in evaluating whether counsel exercised reasonable professional skill and judgment, we 'must make every effort to evaluate a lawyer's conduct from the lawyer's perspective at the time, without the distorting effects of hindsight.'" *Antoine v. Taylor*, 368 Or 760, 768, 499 P3d 48 (2021) (quoting *Lichau*, 333 Or at 360); *see also Montez*, 355 Or at 32 (reasoning that "[d]efense counsel cannot be faulted for lacking a crystal ball").

1. *To prevail purely based on the state of the law, the unraised argument must be "obvious."*

We have previously explained that, "[i]n at least some cases, a lawyer's failure to present an unsettled question may be inadequate assistance of counsel." *Burdge*, 338 Or at 499. To date, however, this court has not been persuaded by a claim, like petitioner's, that any lawyer

exercising reasonable skill and judgment would have raised a particular unsettled legal issue. A petitioner relying solely on arguments about the state of the law can prevail on such a theory of inadequate assistance only "if the state of the law was 'so obviously ambiguous that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it.'" *Antoine*, 368 Or at 771 (quoting *Burdge*, 338 Or at 497-98).

In *Antoine*, we applied that standard to a petitioner who pursued post-conviction relief after a direct appeal in which the Court of Appeals had held that the petitioner's trial counsel failed to pursue the proper remedy for what counsel had understood to be an insufficient indictment. *Id.* at 766 (citing *State v. Antoine*, 269 Or App 66, 78, 344 P3d 69, *rev den*, 357 Or 324 (2015)). In seeking post-conviction relief, the petitioner pointed to the same failure of trial counsel to which the Court of Appeals had identified in affirming the conviction. *Id.* at 767. The post-conviction court was persuaded that the decision of the Court of Appeals "compel[led]" a determination that petitioner was entitled to post-conviction relief. *Id.* (internal quotation marks omitted). But this court disagreed. *Id.* at 775. We concluded that the Court of Appeals' ultimate construction of the applicable law on direct appeal was "not so obvious 'that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it.'" *Id.* (quoting *Burdge*, 338 Or at 497-98).

We reached a similar conclusion in *Burdge*, on which we relied in *Antoine*. The petitioner in *Burdge* had argued that his criminal trial counsel had failed to provide constitutionally adequate assistance by failing to argue that a particular sentence-enhancement statute did not apply to petitioner's sentence. 338 Or at 492. The petitioner relied on the fact that, two years after the petitioner's trial, the Court of Appeals had resolved a different defendant's appeal by construing the enhancement statute in a way that would have made it inapplicable to the petitioner's sentence. *Id.* The Court of Appeals was persuaded "that reasonably competent defense counsel was required to raise the plausible" statutory construction argument that ultimately had been approved by the Court of Appeals. *Burdge v. Palmateer*,

187 Or App 295, 301, 67 P3d 397 (2003), *rev'd*, 338 Or 490 (2005). But this court reversed because, even assuming the statute was ambiguous, "it is not so obviously ambiguous that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it." *Burdge*, 338 Or at 497-98.

We considered a similar theory of inadequate assistance in one other case, *Miller v. Lampert*, 340 Or 1, 14, 125 P3d 1260 (2006). At issue in *Miller* was a post-conviction claim based on trial counsel's failure to argue that the petitioner could not be punished with an enhanced sentence when the enhancement was based on factual findings that were not submitted to the jury—a practice that the Supreme Court later held to be unconstitutional in *Apprendi v. New Jersey*, 530 US 466, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000). *Miller*, 340 Or at 13. We ultimately rejected the petitioner's argument that the Supreme Court's pre-*Apprendi* case law had "foreshadowed" the ultimate decision to such an extent that, "in the exercise of reasonable skill and judgment, [the] petitioner's counsel should have foreseen the Court's decision in *Apprendi*." *Miller*, 340 Or at 13-14, 16-17. Based on an evaluation of that pre-*Apprendi* case law, we concluded that the controlling Supreme Court precedent at the time of the petitioner's trial had not foreshadowed the rule in *Apprendi* but, instead, "appeared to reject it." *Id.* at 16. As a result, we held that the petitioner's "[c]ounsel was not required to anticipate that two years later the United States Supreme Court would reverse course" and announce the rule that it had announced in *Apprendi*. *Id.* But we have described *Miller* as "implicitly suggest[ing]" that a change in precedent can be so foreseeable that an attorney may be constitutionally inadequate if he or she fails to anticipate the change. *Jackson III*, 364 Or at 321 n 5. We turn to whether *Southard* was such a change.

2.  *Southard was not so obviously foreshadowed that the failure to raise the argument proves inadequate assistance.*

We agree with the Court of Appeals that our ultimate construction of the evidence rules in *Southard* was not so obvious that any lawyer exercising reasonable professional

skill and judgment would have objected to a diagnosis of sexual abuse in the absence of physical evidence. As we discussed in *Jackson III*, at the time of petitioner's criminal trial, case law from the Court of Appeals supplied the controlling precedent on whether a medical diagnosis of sexual abuse was admissible in the absence of corroborating physical evidence. 364 Or at 317-18. The Court of Appeals had issued two decisions allowing such evidence.

First, in *Wilson*, the Court of Appeals had rejected an argument that an expert's testimony diagnosing sexual abuse with no physical evidence amounted to an impermissible comment on the credibility of the alleged victim. 121 Or App at 463-66. The Court of Appeals recognized that a diagnosis of child sexual abuse without physical evidence was to some extent a comment on the credibility of the child, and the court acknowledged that this court had already held that "'a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth.'" *Id.* at 464-65 (quoting *State v. Middleton*, 294 Or 427, 438, 657 P2d 1215 (1983), and citing *State v. Keller*, 315 Or 273, 844 P2d 195 (1993)). But the court held that the sexual abuse diagnosis was a "proper medical diagnosis" and not a prohibited "*direct* comment on the child's credibility." *Wilson*, 121 Or App at 465 (emphasis in original). Then-Judge Durham wrote separately to emphasize that "[a] proper foundation for testimony confirming a diagnosis of child abuse is essential because the evidence goes to the heart of the issue that the jury must decide." *Id.* at 472 (Durham, J., concurring). But he agreed with the majority that the diagnosis had not been categorically objectionable as a comment on credibility, and he added that he understood *Middleton* to "provide at least oblique support for the court's ruling here." *Id.*

Next, the Court of Appeals in *Trager* rejected a slightly different challenge to an expert's diagnosis of sexual abuse without physical evidence. 158 Or App at 405. *Trager* was an en banc decision in which the defendant had argued that a diagnosis of sexual abuse is "scientific evidence" and that a diagnosis without physical evidence does not meet the requirements for admitting scientific evidence because the diagnosis simply "operates as a low-tech polygraph impermissibly assessing the credibility of a witness." *Id.* at

402-03. Although the court split on the question of whether the diagnosis was "scientific evidence," all of the judges agreed that the trial court had properly admitted the diagnosis. *Id*. at 405 (majority opinion); *id*. at 405 (Warren, J., concurring); *id*. at 409 (Landau, J., concurring). This court denied review in *Trager* but indicated that Justice Durham would have allowed review. *Trager*, 329 Or 358 (Durham, J., would allow).

Petitioner contends, however, that counsel exercising reasonable skill and judgment would have understood that the Court of Appeals' decision in *Trager* was inconsistent with this court's well-established rule that trial courts may not allow a witness to offer an opinion as to whether another witness is telling the truth.[5] *See State v. Milbradt*, 305 Or 621, 629, 756 P2d 620 (1988) (emphasizing that "we really mean it—*no psychotherapist may render an opinion on whether a witness is credible in any trial conducted in this state*" (emphasis in original)); *Middleton*, 294 Or at 438 (holding that "in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth," but allowing expert testimony that alleged victim had reacted in a "typical manner" for child victims of familial sexual abuse). Petitioner also contends that an attorney exercising reasonable professional skill and judgment would have learned that one member of this court, Justice Durham, had voted to allow review of *Trager* and would have understood that the vote to allow sent a "strong signal" that the issue "was ripe for this court's review." Thus, according to petitioner, an attorney exercising reasonable professional skill and judgment would have foreseen by 2001 that this court would ultimately conclude—as we did in *Southard*—that a diagnosis of sexual abuse is inadmissible in the absence of physical evidence.

Our decision in *Jackson III* provides some support for petitioner's position. As indicated above, we observed that, "although *Trager* may have been controlling, there was tension between that decision and several decisions from this court holding that medical experts were not permitted

---

[5] Petitioner's arguments do not address the Court of Appeals' decision in *Wilson*.

to vouch for a person who asserted that the defendant had sexually abused them." *Jackson III*, 364 Or at 329. We also identified the one vote to allow review of *Trager* as one of the "objective indicia" that there was "more than a mere possibility" that this court would eventually allow review of the issue that we ultimately resolved in *Southard*. *Jackson III*, 364 Or at 329. Under the circumstances, we concluded, "this court's decision in 2008 to allow review in *Southard* was not unexpected." *Jackson III*, 364 Or at 329.

But our conclusion in *Jackson III* that "review in *Southard* was not unexpected" falls far short of a conclusion that *Trager*—and *Wilson*—were so obviously incorrect that, as a matter of law, counsel exercising reasonable professional skill and judgment in 2001 would have anticipated that this court would ultimately conclude that a diagnosis like Steinberg's was inadmissible. The Court of Appeals in *Wilson* identified a plausible basis for distinguishing *Middleton*, and six members of this court were willing to let the decision stand. *Wilson*, 121 Or App at 465; *see Wilson*, 318 Or 61 (Unis, J., would allow).[6] Although Justice Durham's interest in allowing review of *Trager* may have signaled an interest in the question,[7] our ultimate answer in *Southard* was not so obviously foreseeable that an examination of the existing case law can establish that all counsel exercising reasonable professional skill and judgment in 2001 would have preserved an objection to a diagnosis like Steinberg's.

---

[6] The state emphasizes that, when this court ultimately decided *Southard*, we ruled the sexual abuse diagnosis to be inadmissible under OEC 403 and not based on a direct application of the *Middleton* and *Milbradt* admonition against admitting opinions regarding credibility. But that observation is of limited significance to an inquiry that is not focused on hindsight. The relevant point is that *Southard* drew on similar legal principles in concluding that the sexual abuse diagnosis "turned primarily on the sort of credibility determination that lay jurors ordinarily make" and that the rule announced in *Southard* would have made Steinberg's opinion inadmissible. *See* 347 Or at 135. And we have already held that "there was more than a mere possibility that," had petitioner's counsel raised the challenge at issue, this court would have allowed review and reversed the conviction. *Jackson III*, 364 Or at 331.

[7] Given Justice Durham's concurrence in the Court of Appeals in *Wilson*, in which he highlighted the need for "[a] proper foundation" for diagnoses of sexual abuse, *see* 121 Or App at 472 (Durham, J., concurring), careful court watchers might have predicted that he was interested in the "scientific evidence" issue on which the court split in *Trager*, *see* 158 Or App at 405 (majority opinion); *id.* at 405 (Warren, J., concurring); *id.* at 409 (Landau, J., concurring).

B.   *Whether the Attorney Affidavits Raise Genuine Issues of Material Fact that Require Reversal of the Grant of Summary Judgment to the Superintendent*

Although we have concluded that *Southard* was not so obviously foreseeable that petitioner can prevail on his claim of inadequate assistance purely by relying on the state of the law in 2001, petitioner insists that his affidavits provide facts that would permit him to prevail. Petitioner proposes two ways that his affidavits can be understood to raise issues of fact that—if proved—would establish that his attorney failed to exercise reasonable professional skill and judgment. First, petitioner proposes that the affidavits are evidence that the "prevailing professional norms" in 2001 included recognizing and raising the argument against admitting a diagnosis like that offered by Steinberg. Under that theory, petitioner's affidavits permit the court to conclude that the failure to satisfy those "prevailing professional norms" amounted to a failure to exercise reasonable professional skill and judgment. Second, petitioner proposes that evidence of the knowledge and practices of other attorneys with respect to challenging sexual abuse diagnoses in 2001 is relevant to whether a reasonable investigation would have made petitioner's counsel aware of the potential benefits of raising the same argument. Under that theory, the evidence permits a conclusion that the failure of defendant's counsel to raise a similar challenge is the product of a failure to reasonably "prepare himself on the law to the extent appropriate to the nature and complexity of the case." *See Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981).

As we understand the arguments, petitioner's first theory of relevance is essentially an alternative way to prove that any attorney exercising reasonable professional skill and judgment would have preserved a *Southard*-type objection to Steinberg's testimony. Petitioner's second theory depends upon the premise that, even if it was not necessarily unreasonable to fail to preserve a *Southard*-type objection, the particular circumstances under which petitioner's attorney failed to object can establish that his attorney failed to exercise reasonable professional skill and judgment. At least on this record, petitioner's first theory of relevance does not

provide a basis for reversing the grant of summary judgment to the superintendent. But his second theory is consistent with the circumstance-dependent approach that we have employed in other cases to evaluate a lawyer's litigation decisions. And, as we will explain, petitioner's evidence creates genuine issues of material fact that—if proved— would support a conclusion that petitioner's attorney failed to exercise reasonable professional skill and judgment.

1.  *Petitioner's evidence does not create an issue of material fact regarding relevant prevailing norms.*

Petitioner's first theory for why his affidavits permit him to prevail is premised on an assumption that if, as a "matter of historical fact," enough attorneys recognized the value of preserving *Southard*-type challenges to diagnoses of sexual abuse, then that practice can be a "prevailing professional norm" that the exercise of reasonable professional skill and judgment required of all attorneys. On that point, petitioner urges us to adopt reasoning of the Supreme Court that—under the Sixth Amendment—the question of whether trial counsel's representation "'fell below an objective standard of reasonableness' *** is necessarily linked to the practice and expectations of the legal community." *Padilla v. Kentucky*, 559 US 356, 366, 130 S Ct 1473, 176 L Ed 2d 284 (2010) (quoting *Strickland v. Washington*, 466 US 668, 688, 104 S Ct 2052, 80 L Ed 2d 674 (1984)). As the Court explained in *Padilla*, it "long ha[s] recognized that '[p]revailing norms of practice as reflected in [legal association] standards and the like *** are guides to determining what is reasonable.'" *Id.* (quoting *Strickland*, 466 US at 688 (second brackets and omission in *Padilla*)). According to petitioner, the attorney affidavits that he offered in opposing summary judgment contain the kind of evidence of "prevailing professional norms" that should inform our inquiry under Article I, section 11, into what the exercise of reasonable professional skill and judgment requires.

At least when the question is whether the exercise of reasonable professional skill and judgment obligated counsel to raise a particular unsettled legal argument, our decisions in *Antoine*, *Burdge*, and *Miller* seemingly erect an obstacle to answering that question based on historical

evidence that raising the argument was a "prevailing pro-
fessional norm." Those cases, instead, determined whether
the exercise of reasonable professional skill and judgment
obligated counsel to raise a particular unsettled legal
argument by a judicial assessment of the strength of the
argument—whether the argument was "so obvious 'that any
lawyer exercising reasonable professional skill and judg-
ment necessarily would have seen it.'" *Antoine*, 368 Or at
777 (quoting *Burdge*, 338 Or at 497-98); *Miller*, 340 Or at 16
(concluding that "[c]ounsel was not required to anticipate"
the Supreme Court's change in precedent). Although in the-
ory evidence of common practices within the legal commu-
nity might suggest that a particular legal argument is—or
is not—"so obvious," we made that determination in *Antoine*,
*Burdge*, and *Miller* entirely through our own analysis of the
state of the law.[8] *Antoine*, 368 Or at 775-80; *Burdge*, 338 Or
at 497-98; *Miller*, 340 Or at 14-16. We recognize that the
petitioners in our previous cases did not ask us to consider
historical evidence in evaluating whether an argument was
"so obvious 'that any lawyer exercising reasonable profes-
sional skill and judgment necessarily would have seen it.'"
*Antoine*, 368 Or at 769, 775 (quoting *Burdge*, 338 Or at 497-
98). And we do not rule out the possibility that evidence of
prevailing professional norms may inform our legal inquiry
under Article I, section 11—in another case—into whether
the exercise of reasonable professional skill and judgment
obligated attorneys to pursue a particular course of action.
But in this case, petitioner cannot prevail on his theory
that every lawyer exercising reasonable professional skill
and judgment would have raised a *Southard*-type objection
at a trial in 2001, because the affidavits that he offered on

---

[8] It is worth reiterating that the constitutional inquiry under Article I, sec-
tion 11, into whether a lawyer exercised reasonable professional skill and judg-
ment is ultimately a legal question. *Pereida-Alba*, 356 Or at 663. In that sense
the constitutional inquiry differs significantly from the inquiry in civil negli-
gence cases into whether counsel acted "as a reasonably competent attorney in
protecting and defending the interests of the client," which is a question for the
factfinder and is frequently made with the benefit of expert testimony regarding
the standard of care. *See Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149,
160, 843 P2d 890 (1992) (describing duty of care in a legal negligence claim); *see
also Vandermay v. Clayton*, 328 Or 646, 655, 984 P2d 272 (1999) (explaining that
the jury in legal negligence claim decides whether lawyer satisfied duty of care,
generally with the benefit of expert testimony regarding "what the reasonable
practice is in the community" (internal quotation marks omitted)).

summary judgment do not permit a reasonable inference regarding "prevailing professional norms" among trial attorneys in 2001.

Petitioner contends that the attorney affidavits, which the trial court refused to consider, provide evidence that it was a "prevailing professional norm" among criminal defense attorneys in 2001 to recognize and raise a *Southard*-type argument against admitting diagnoses like that offered by Steinberg.[9] The superintendent insists, however, that petitioner's affidavits "provide only anecdotal evidence as to what some individual lawyers were doing" at the trial level in 2001. We agree with the superintendent that the factual averments in petitioner's attorney affidavits— offered by an attorney who first began practicing in 2004, an attorney who does not describe any knowledge of sexual abuse cases, and two appellate attorneys—permit at best an inference that *some* trial attorneys were raising the issue by 2001.

One of the affidavits is from McHenry, who was a criminal defense attorney beginning in 2004. The affidavit describes one instance in which he raised a *Southard*-type challenge years after the time of petitioner's trial and asserts that his law partner had once raised a similar challenge prior to 2001. Another affidavit is from Gorski, who was a criminal defense attorney in 2001 but does not describe any experience handling sexual abuse cases or any knowledge that attorneys were raising *Southard*-type objections to diagnoses of sexual abuse.

Two other affidavits contain somewhat more probative factual averments.[10] One is the affidavit from the

---

[9] As indicated above, petitioner did not develop an argument in the Court of Appeals for why the statements of opinion set out in the affidavits were relevant. 369 Or at 431. Nor does he argue in this court that we can consider the many statements of opinion set out in the affidavits in evaluating whether the affidavits create a genuine issue of material fact. Thus, the question is whether the factual averments create a genuine issue of material fact regarding prevailing professional norms.

[10] Petitioner offered one other affidavit that the post-conviction court excluded. It was an affidavit from attorney Balske, which the Court of Appeals described as consisting "almost entirely of opinion testimony." *Jackson IV*, 304 Or App at 515. Petitioner does not argue in this court that the affidavit contains probative factual averments.

attorney who handled petitioner's direct appeal, Allen, which the trial court did not exclude. The other is from Johnson, who also handled criminal appeals in 2001. According to Allen, following *Trager*, she and other appellate attorneys in the "State Public Defender's Office continued to believe that the issue of whether a diagnosis of sexual abuse in the absence of physical corroborating evidence constituted an impermissible opinion was a viable issue that should continue to be raised at every available opportunity at trial and on appeal." Similarly, Johnson averred that attorneys working for the appellate public defender routinely raised the issue whenever it was preserved. But neither attorney attests to having worked as a criminal *trial* attorney in or before 2001, and neither claims to have knowledge of whether raising a *Southard*-type argument was a common or rare strategy among trial attorneys in 2001. Thus, even if those affidavits might permit an inference regarding a prevailing norm among attorneys handling criminal appeals in 2001, the most favorable inference that we can draw about prevailing norms under the circumstance of a trial is that *some* trial attorneys were raising the issue by 2001. Accordingly, the record on summary judgment does not raise a genuine issue of material fact to support petitioner's theory that, under "prevailing professional norms," any attorney exercising reasonable professional skill and judgment in 2001 would have preserved a *Southard*-type argument.[11]

> 2. *Petitioner's evidence creates genuine issues of material fact regarding the circumstances under which his attorney failed to object to Steinberg's sexual abuse diagnosis.*

Petitioner's second theory for why the affidavits create genuine issues of material fact focuses on circumstances particular to his attorney's failure to raise a *Southard*-type argument. According to petitioner, the evidence permits reasonable factual inferences from which the court could determine that petitioner's attorney failed to object to Steinberg's

---

[11] Given our conclusion that the affidavits do not permit any reasonable inferences regarding "prevailing norms" of trial practice in 2001, we do not separately consider whether petitioner offered the kind of evidence that could establish, under the Sixth Amendment, that reasonable performance obligated trial attorneys in 2001 to raise a *Southard*-type argument.

diagnosis as the result of a failure to reasonably investigate and "prepare himself on the law to the extent appropriate to the nature and complexity of the case," citing *Krummacher*, 290 Or at 875. The argument relies on a premise that a lawyer's failure to raise an important and ultimately correct legal argument may constitute inadequate assistance of counsel in a particular case even where the argument was not so obviously correct that a lawyer exercising reasonable professional skill and judgment necessarily would have raised it. The superintendent primarily rejects the premise of petitioner's argument, contending that petitioner has not offered a viable theory of inadequate assistance. But the superintendent also contends that petitioner's evidence cannot prove the factual bases to establish that his attorney unreasonably failed to investigate challenges to the diagnosis, given the limited time for preparation.

a.   Failure to adequately prepare is a viable theory.

Although we have concluded that this court's decision in *Southard* was not so foreseeable that the exercise of reasonable professional skill and judgment in 2001 *required* attorneys to raise a *Southard*-type objection, it does not necessarily follow that every attorney who failed to raise the argument did so in the exercise of reasonable professional skill and judgment. The superintendent contends, however, that our decisions in cases such as *Burdge*, *Miller*, and *Antoine* demonstrate that the question of whether a lawyer unreasonably failed to raise a legal argument must be resolved entirely as a matter of law and that the circumstances surrounding that failure are irrelevant if the law alone did not obligate the attorney to raise the argument. Petitioner acknowledges that the question of whether a lawyer exercised reasonable professional skill and judgment "presents a legal issue." *Pereida-Alba*, 356 Or at 663. But petitioner argues that the legal issue is not determined in a factual vacuum.

Our case law supports petitioner's understanding that the legal question of whether a lawyer exercised reasonable professional skill and judgment takes into account facts regarding the circumstances under which the lawyer

performed. Indeed, we have previously highlighted the distinction between the historical circumstances surrounding counsel's performance—which "present factual issues for the trial court"—and the "question whether, given those circumstances, counsel reasonably could have" failed to pursue a particular course of action—which "presents a legal issue." *Pereida-Alba*, 356 Or at 663; *see also Montez*, 355 Or at 7 (emphasizing that a petitioner must demonstrate "'by a preponderance of the *evidence* that [the trial lawyer] failed to exercise reasonable professional skill and judgment'" (quoting *Lichau*, 333 Or at 359 (emphasis added))). And we have repeatedly emphasized that "what constitutes adequate performance is fact-specific and dependent on the 'nature and complexity of the case.'" *Richardson v. Belleque*, 362 Or 236, 255, 406 P3d 1074 (2017) (quoting *Johnson*, 361 Or at 701).

Our case law also illustrates that the circumstances under which a decision is made can establish that the lawyer failed to exercise reasonable professional skill and judgment even when such exercise does not compel a particular decision. *E.g.*, *Stevens v. State of Oregon*, 322 Or 101, 108-09, 902 P2d 1137 (1995); *see Hinton v. Alabama*, 571 US 263, 274, 134 S Ct 1081, 188 L Ed 2d 1 (2014) (explaining that "choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). For example, in *Stevens*, we held that the petitioner's trial counsel had failed to exercise reasonable professional skill and judgment in deciding not to interview potential impeachment witnesses. 322 Or at 109. We emphasized that lawyers inevitably must make decisions about what avenues of investigation to pursue and that "an appellate court usually will not second-guess" those tactical decisions. *Id.* at 108-09. But we cautioned that "the exercise of reasonable professional skill and judgment generally requires an investigation that is legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner." *Id.* at 108. And we concluded that, under the circumstances, the attorney's decision not to interview the potential witnesses "was not a choice that was based on a reasonable evaluation of the

likely costs and potential benefits of pursuing the investigation." *Id.* at 109.

Our decision in *Lichau* is another example of that circumstance-specific approach. We held in *Lichau* that the petitioner's trial counsel had provided constitutionally inadequate assistance by deciding to withdraw an alibi defense without adequately investigating the strength of the defense. 333 Or at 362. Our decision makes clear that the same decision to withdraw the defense, or to limit investigation of the defense, might have been reasonable in the abstract, or under other circumstances, but that "to be considered an exercise of professional skill and judgment, a lawyer's tactical decision must be grounded on a reasonable investigation." *Id.* at 360 (internal quotation marks omitted). We concluded that the attorney's decision to limit his investigation of potential witnesses was not "based on a reasonable evaluation of the likely costs and potential benefits" to the petitioner and that, "[b]ecause of his unreasonably limited pretrial investigation," the attorney "was not 'equipped to advise his client, exercise professional judgment and represent [his client] in an informed manner.'" *Id.* at 361-62 (alterations added; quoting *Krummacher*, 290 Or at 875; other internal quotation marks and citation omitted). As a result, the attorney's "decision to withdraw the alibi defense was not a reasonable exercise of professional skill and judgment." *Id.* at 362.

Similarly, in *Richardson*, we concluded that the lawyer's decision not to investigate aspects of the petitioner's juvenile background was not the exercise of reasonable professional skill and judgment "[i]n light of the nature and complexity of" the proceeding and in light of "the information that defense counsel knew"—not because it was necessarily unreasonable for an attorney to fail to investigate a petitioner's juvenile background. 362 Or at 258. And in *Pereida-Alba*, we explained that whether it is unreasonable for a lawyer to fail to even consider pursuing a particular course of action "will turn on" the particular circumstances of the case, including "whether the strategy that defense counsel did employ was reasonable, the relationship between the evidence or theory that defense counsel failed to consider and the strategy that counsel did pursue, and the extent to

which counsel should have been aware of the strategy that petitioner now identifies." 356 Or at 674.

The analysis under the Sixth Amendment is comparable, as illustrated by the Supreme Court's conclusion in *Hinton* that the petitioner's criminal trial attorney had unreasonably failed to seek additional funds to hire an adequate expert because he was unaware that the law allowed him to seek additional funds. 571 US at 274. In the underlying criminal trial, the state's evidence linking the petitioner to two murders had consisted entirely of forensic comparisons of the petitioner's revolver and bullets recovered from the scene. *Id.* at 265-66. The attorney whose performance was at issue had recognized the significance of the state's expert testimony and had filed a motion for funding to hire a defense firearms expert. *Id.* at 266. Yet when the judge awarded only $1,000, mistakenly describing that amount as the "statutory maximum," the attorney did not attempt to correct the mistake or seek additional funds, because he also was not aware that the law had changed. *Id.* at 266-67. Instead, the attorney was forced to settle for the one person willing to work for that amount, even though the attorney did not think that the person had the expertise to testify effectively. *Id.* at 273. Before explaining why the attorney's performance was deficient, the court emphasized that "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'" *Id.* at 275 (quoting *Strickland*, 466 US at 690 (brackets in *Hinton*)). But the court held that the attorney's choice of expert was unreasonable under the circumstances—because the attorney chose to use "an expert that *he himself* deemed inadequate" as a result of the attorney's "unreasonable failure to understand the resources that state law made available to him." *Id.* (emphasis in original).

Thus, our decisions in the context of other claims for post-conviction relief support petitioner's argument that the circumstances surrounding a particular attorney's litigation choice can establish that the lawyer failed to exercise reasonable professional skill and judgment, even when the choice itself could be consistent with the exercise of

reasonable professional skill and judgment.[12] There is no principled basis for carving out a different rule when the alleged inadequate preparation results in the failure to raise a foreseeable and ultimately meritorious legal argument.

Although our analysis in *Antoine*, *Burdge*, and *Miller* was limited to the purely legal issue of whether the unraised argument was "so obvious 'that any lawyer exercising reasonable professional skill and judgment necessarily would have seen it,'" *see Antoine*, 368 Or at 777 (quoting *Burdge*, 338 Or at 497-98), we did not hold that such claims always must be resolved purely by examining the state of the law. Rather, the rule from those cases is that "an appellate decision issued after petitioner's trial cannot, *on its own*, demonstrate that trial counsel failed to exercise reasonable professional judgment in failing to spot a debatable legal issue." *Id.* at 769 (describing reasoning of *Burdge*, 338 Or at 497 (emphasis added)).

As described above, in both *Miller* and *Burdge*, the post-conviction court had denied the petitioner's claim that his trial counsel was inadequate for failing to identify and advance a legal position that was not yet supported by existing case law. *Miller*, 340 Or at 6; *Burdge*, 338 Or at 492. Thus, given our standard of review, the petitioners in those cases could prevail on appeal only by demonstrating that they were entitled to prevail as a matter of law. *Miller*, 340 Or at 16 (concluding that trial "[c]ounsel was not *required* to" have anticipated *Apprendi* (emphasis added)); *Burdge*, 338 Or at 499 (concluding that the statute at issue was "not so

---

[12] The superintendent contends that it is always reasonable for trial counsel to decline to raise an objection or make an argument that will not succeed in the trial court, quoting a statement by the Supreme Court that "[t]he trial is the main event at which a defendant's rights are to be determined *** and not simply a tryout on the road to appellate review." *Davila v. Davis*, ___ US ___, 137 S Ct 2058, 2066, 198 L Ed 2d 603 (2017) (internal quotation marks omitted). But *Davila*, which addressed a nonconstitutional question concerning an equitable exception to a bar to federal habeas review, *id.* at 2065, does not stand for the Sixth Amendment proposition for which the superintendent cites it. And, more significantly, this court's Article I, section 11, case law is contrary to the superintendent's proposition that it is always reasonable for trial counsel to decline to raise an objection or make an argument that will fail in the trial court. *See Jackson III*, 364 Or at 324 (rejecting superintendent's argument that "there is no remedy for a trial counsel whose deficiencies prevent appellate counsel from presenting a meritorious issue on appeal").

obviously ambiguous that any lawyer exercising reasonable professional skill and judgment *necessarily* would have seen it" (emphasis added)). *Antoine* also reached us as a request to decide that the petitioner was entitled to prevail as a matter of law. As we specifically noted in *Antoine*, the petitioner had "not presented any evidence that his reading of [the controlling case] was widely shared or even that any other attorney had read [the case] in that manner prior to [the Court of Appeals' decision on direct appeal]." 368 Or at 780. Instead, the only evidence that the petitioner had presented was portions of the record from his criminal trial and an affidavit from his trial counsel, and he had attempted to prove entirely through case law that his trial counsel had failed to exercise reasonable professional skill and judgment. *Id.* at 766-67.

In other words, our earlier cases explored the possibility that a change in the law was so foreseeable that any attorney exercising reasonable professional skill and judgment would have been expected to identify and raise the issue. But they do not rule out a claim that a particular attorney's failure to raise the argument was unreasonable as a result of a failure to at least identify and evaluate an argument that is sufficiently foreshadowed under existing law. We have already concluded that there was "tension" in 2001 between the Court of Appeals' case law on sexual abuse diagnoses and this court's case law on vouching to the extent that "this court's decision in 2008 to allow review in *Southard* was not unexpected." *Jackson III*, 364 Or at 329. And, although that change in the law was not so obviously foreseeable that every attorney exercising reasonable professional skill and judgment in 2001 was obligated to raise it, that does not end the inquiry. When the theory of the claim is that a particular attorney failed to raise the argument under circumstances that amount to inadequate assistance, we will evaluate the claim under the same standard by which we have evaluated other cases involving litigation choices that the attorney would not have been obligated to make. Under that standard, some petitioners may be able to prove a claim of inadequate assistance by establishing that their attorney's failure to raise the argument was a result of the attorney's failure to investigate and prepare "on the

law to the extent appropriate to the nature and complexity of the case so that [the lawyer was] equipped to \*\*\* exercise professional judgment and represent the defendant in an informed manner" with respect to potentially valuable challenges to existing law. *See Krummacher*, 290 Or at 875; *see also Hinton*, 571 US at 274 (emphasizing that "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*").

      b.   Genuine issues of material fact make the claim ineligible for resolution on summary judgment.

The remaining question in this appeal from the grant of summary judgment is whether there are genuine issues of material fact that could establish petitioner's claim that the circumstances under which his attorney failed to raise a *Southard*-type argument demonstrate the attorney's failure to exercise reasonable professional skill and judgment in investigating and preparing himself on the law. Before turning to petitioner's evidence, we review the type of circumstances that inform the ultimate determination of whether an attorney exercised reasonable professional skill and judgment in preparing to defend a case. At the broadest level, "the purpose of requiring attorneys to make a reasonable investigation is to enable them to reasonably consider the costs and benefits of pursuing a given action and thus permit them to make an informed decision." *Farmer v. Premo*, 363 Or 679, 697, 427 P3d 170 (2018). To evaluate whether the attorney's investigation and preparation were reasonable, "we must understand the nature and complexity of the issues presented," including "the stakes for petitioner" and what "defense counsel knew." *Richardson*, 362 Or at 257. An attorney's decision to limit the investigation must be "based on a reasonable evaluation of the likely costs and potential benefits of pursuing the investigation." *Stevens*, 322 Or at 109. And to the extent that the attorney has failed even "to consider an issue," our assessment of reasonableness "will turn on, among other things, whether the strategy that defense counsel did employ was reasonable, the relationship between the evidence or theory that defense counsel failed

to consider and the strategy that counsel did pursue, and the extent to which counsel should have been aware of the strategy that petitioner now identifies." *Pereida-Alba*, 356 Or at 674. Given those broad categories of pertinent circumstances, evidence that other attorneys in 2001 viewed the Court of Appeals precedent as vulnerable and were strategically raising a meritorious legal argument that ultimately proved to be successful is relevant and should not have been stricken from the record.[13] *See* OEC 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

Turning to the contents of petitioner's affidavits, and viewing them "in the light most favorable" to petitioner, *see Eklof*, 360 Or at 729, we conclude that genuine issues of material fact required the trial court to deny the superintendent's motion for summary judgment. The affidavit from petitioner's trial counsel permits reasonable inferences that he considered Steinberg's diagnosis to be crucial evidence in a case that otherwise came down to a credibility contest—*i.e.*, that he understood the stakes for petitioner to be significant if the state were allowed to rely on Steinberg's diagnosis; that he had no other strategy for challenging Steinberg's testimony; that he knew that he had access, through his membership in the OCDLA, to a professional resource through which criminal defense lawyers shared information about various trial strategies; and that his failure to investigate potential challenges to Steinberg's diagnosis was not based on any evaluation of the likely costs and potential benefits of limiting his preparation in that way. He also avers that, had he been aware that a member of this court had expressed interest in reviewing *Trager*, he would have pursued the strategy of preserving a challenge to Steinberg's diagnosis of sexual abuse given the absence of physical evidence.

---

[13] As set out above, petitioner does not offer any argument for reversing the Court of Appeals' conclusion that the trial court correctly struck portions of the affidavits that contain opinions, such as opinions regarding the correct interpretation of case law and what "any competent criminal defense attorney" would have done or understood in 2001. Thus, our "relevance" decision is limited to the statements of fact attested to in the affidavits. 369 Or at 442 n 10.

The attorney affidavits provide evidence of "the extent to which counsel should have been aware of the strategy that petitioner now identifies." *See Pereida-Alba*, 356 Or at 674. Viewed in the light most favorable to petitioner, the affidavits permit reasonable inferences that knowledge and advice regarding the strategy of raising *Southard*-type challenges was being widely shared with criminal defense trial lawyers at the time of petitioner's trial, and particularly with those who—like petitioner's attorney—had access to the OCDLA listserv. The affidavit from attorney Johnson avers that appellate attorneys for the Office of Public Defense Services (OPDS) made an effort "to provide guidance to the criminal defense trial bar" regarding "legal issues worthy of preserving for appeal" and did so "by being available for phone consultations, making presentations at continuing legal education seminars and by actively participating on the OCDLA listserv." Among the guidance that they were sharing in 2001 was their assessment that the diagnosis "issue was ripe for Supreme Court review." The appellate attorneys "did everything [they] could to encourage trial attorneys to continue to press the issue," and the "issue was broadly discussed on the OCDLA listserv following the decision in *Trager*." The affidavit from attorney Allen makes many of the same representations.

The inferences that can reasonably be drawn from those affidavits could establish that the failure by petitioner's trial counsel to raise a *Southard*-type challenge to Steinberg's testimony was the product of counsel's unreasonable failure to "prepare himself on the law to the extent appropriate to the nature and complexity of the case so that he [would be] equipped to *** exercise professional judgment and represent the defendant in an informed manner" with respect to the strategy of raising an ultimately meritorious evidentiary challenge to Steinberg's testimony. *See Krummacher*, 290 Or at 875.

We reject the dissent's suggestion that our holding in this case requires "an attorney with a correct understanding of controlling legal principles" to investigate particular sources of information in order to be adequately prepared. *See* 369 Or at 459 (Garrett, J., dissenting). The

evidence here permits reasonable inferences that petitioner's attorney had no understanding of the controlling legal principles regarding a diagnosis of sexual abuse and undertook no inquiry to familiarize himself with potential challenges to that critical evidence in petitioner's case. To conclude that such omissions can rise to the level of inadequate assistance is not a new proposition, as *Krummacher* illustrates. *See* 290 Or at 875 (identifying as one of the "general propositions" of constitutional adequacy that counsel must investigate and prepare on the law in order to "represent the defendant in an informed manner"). And this opinion does not call for any change in the practices of criminal defense attorneys who routinely prepare on the law "to the extent appropriate to the nature and complexity of the case." *See id.* If it is rare for viable inadequate assistance claims to be based on an attorney's failure to become aware of a widely recommended challenge to controlling Court of Appeals case law, it is because petitioners often are unable to prove that such failures had any tendency to affect the outcomes of their prosecutions. Here, however, we have already determined that petitioner's evidence established prejudice as a matter of law. *Jackson III*, 364 Or at 331.

We do not suggest that petitioner's evidence would compel the necessary inferences to establish his claim that his trial counsel did not adequately prepare. Moreover, many genuine issues of material fact remain that also will inform the ultimate legal inquiry into whether petitioner's attorney exercised reasonable professional skill and judgment. Those issues of material fact include: how readily petitioner's attorney could have learned of the strategy had he investigated, what exactly he could have learned about the strategy, what he would have done with the information that he could have found, and what competing litigation priorities may have informed his decision not to investigate strategies for challenging Steinberg's testimony. Accordingly, the trial court erred in granting summary judgment to the superintendent but correctly denied petitioner's cross-motion for summary judgment. *See TriMet v. Amalgamated Transit Union Local 757*, 362 Or 484, 491, 412 P3d 162 (2018) (when parties have filed cross-motions for summary judgment, each party's

motion must be evaluated in the light most favorable to the opposing party).[14]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed in part and affirmed in part, and the case is remanded to the circuit court for further proceedings.

**GARRETT, J.,** dissenting.

The majority concludes that summary judgment was improperly granted because the evidence of what some appellate lawyers were recommending in 2001 supports reasonable factual inferences that, if drawn, could ultimately establish that petitioner's trial attorney failed to prepare himself "on the law to the extent appropriate to the nature and complexity of the case." 369 Or at 449-50; *see Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981). Because, in my view, the factual inferences necessary to support that legal conclusion cannot reasonably be drawn from the summary judgment record, I respectfully dissent.

I agree with much of the majority opinion. First, I agree that this court's decision in *State v. Southard*, 347 Or 127, 218 P3d 104 (2009), was not so "obviously foreseeable" that, based purely on the state of the law, "all counsel exercising reasonable professional skill and judgment in 2001 would have preserved an objection" to the evidence of Dr. Steinberg's diagnosis. 369 Or at 438. Second, I agree that the evidence presented by petitioner at summary judgment is insufficient to show that it was a "prevailing professional

---

[14] The superintendent urged the Court of Appeals to affirm purely on the basis of petitioner's failure to challenge what may have been alternative bases for the trial court to exclude the affidavits, citing Court of Appeals' precedent in support. *See Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 236, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005) (concluding that where appellants "fail to challenge the alternative basis of the trial court's ruling, we must affirm it"). However, "[g]iven the record ambiguity," the Court of Appeals "assum[ed] without deciding" that the affidavits were stricken only as irrelevant and reached the merits of the relevance question. *Jackson IV*, 304 Or App at 511. The additional bases for exclusion that the state had raised are those commonly associated with challenges to expert opinions, and petitioner does not argue in this court that he should have been entitled to rely on the expert-opinion portions of the affidavits. Thus, we are not called upon to address the superintendent's alternative bases for excluding the opinion portions of the affidavits.

norm" for criminal defense trial attorneys in 2001 to raise a *Southard*-type argument under similar circumstances. *Id.* at 443. That is because, as the majority explains, petitioner's evidence fails to reveal anything at all about prevailing professional norms among criminal trial lawyers at that time. *Id.*

The majority reasons, however, that issues of fact remain because the failure of petitioner's counsel to raise a *Southard*-type objection, though not *necessarily* a breach of the standard of care, *may* have occurred in circumstances that reflect a failure by counsel to sufficiently prepare himself on the law. However viable that theory might be in the abstract, it finds no support in this record.

I take no issue with the majority's general observation that "the circumstances surrounding a particular attorney's litigation choice can establish that the lawyer failed to exercise reasonable professional skill and judgment, even when the choice itself could be consistent with the exercise of reasonable professional skill and judgment." *Id.* at 447-48. Thus, hypothetically, the failure by petitioner's counsel to pursue the strategy of preserving a *Southard*-type objection could have been the product of constitutionally inadequate assistance, even though other attorneys performing adequately might not have preserved it. The question is whether *this* record permits the conclusion that, under the circumstances, petitioner's counsel performed deficiently. It does not, because petitioner failed to present any evidence that the steps that might have informed his attorney in 2001 about the *Southard* strategy are steps that a competent attorney was required to take.

As the majority notes, the ultimate question of whether counsel performed deficiently is a question of law, but one that may turn on questions of fact. *Id.* at 426-27; *see Pereida-Alba v. Coursey*, 356 Or 654, 663, 342 P3d 70 (2015). As a matter of law, a competent lawyer must be familiar with the law relevant to the case and undertake a reasonable investigation of the case. *Krummacher*, 290 Or at 874 ("[Adequate assistance of counsel does not] require that [counsel] expend time and energy uselessly or for negligible potential benefit under the circumstances of the case.

Rather, it requires that the lawyer do those things reasonably necessary to diligently and conscientiously advance the defense."); *see also Strickland v. Washington*, 466 US 668, 688, 104 S Ct 2052, 80 L Ed 2d 674 (1984) ("Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process."). What constitutes "reasonable" preparation and investigation, however, may involve underlying factual questions, on which evidence of prevailing professional norms has been deemed relevant. *Pereida-Alba*, 356 Or at 663 (explaining that reasonableness is a legal question when determining whether counsel was constitutionally inadequate); *see also Padilla v. Kentucky*, 559 US 356, 366, 130 S Ct 1473, 176 L Ed 2d 284 (2010) (explaining that the reasonableness inquiry is "necessarily linked to the practice and expectations of the legal community").

Here, the majority describes issues of fact and matters of permissible "inference" that, in its view, will "inform the ultimate legal inquiry into whether petitioner's attorney exercised reasonable professional skill and judgment," 369 Or at 453. The majority regards those issues as capable of resolution in more than one way, making summary judgment inappropriate.

First, the majority states that the affidavit from petitioner's trial counsel permits "reasonable inferences" about counsel's preparation, including that he viewed the Steinberg diagnosis as crucial evidence, that he was unaware of a legal basis for challenging it, that he was aware of the Oregon Criminal Defense Lawyers Association (OCDLA) listserv but did not check it, and that, if he had learned of this court's potential interest in taking up the issue, he would have pursued the strategy of preserving an objection to Steinberg's diagnosis. *Id.* at 451. However, while the majority frames those facts in the language of "reasonable inference," I note that none of them is in dispute.

Second, the majority identifies additional "issues of material fact" as including "how readily petitioner's attorney could have learned of the strategy had he investigated,

what exactly he could have learned about the strategy, what he would have done with the information that he could have found, and what competing litigation priorities may have informed his decision to not investigate strategies for challenging Steinberg's testimony." *Id.* at 453.

But those, too, are not *disputed* issues of material fact. There is no doubt, based on all of the affidavits submitted, that: (1) petitioner's counsel knew about the legal resources available through the Office of Public Defense Services (OPDS) and the OCDLA listserv; (2) if he had consulted those resources, he could have learned that some lawyers recommended making a *Southard*-type objection notwithstanding *State v. Trager*, 158 Or App 399, 405, 974 P2d 750, *rev den*, 329 Or 358 (1999) (holding that a medical diagnosis of sexual abuse was admissible even absent corroborating physical evidence); and (3) if petitioner's counsel had learned of that strategy, he would have preserved the issue (as he said in his affidavit). The superintendent contests none of that as a *factual* matter.

The only question up for debate is whether petitioner's counsel *should* have checked the OPDS and OCDLA resources. That is, whether he performed unreasonably when he did not think to either consult with OPDS appellate lawyers or check the OCDLA listserv for advice about the Steinberg evidence. As I understand the majority's articulation of the legal framework, that is a question of law. 369 Or at 426-27. Thus, a trial is required only if there are disputed issues of fact that bear on that legal question. As I have noted, most of the issues of fact that the majority describes are actually not disputed at all. There is no dispute about what petitioner's counsel could have learned from OPDS or OCDLA, nor about what he would have done with the information had he learned it. The only possible factual disputes concern whether petitioner's counsel acted inconsistently with professional standards and norms when he did not check those resources and acquire that information. That is a factual question that *would* be appropriate for resolution at trial—if petitioner had met his burden at summary judgment to produce any evidence relevant to that question. The problem is that he produced none.

Nothing in the record tends to suggest that petitioner's counsel either did, or did not, act consistently with prevailing standards among *trial* lawyers by not consulting with OPDS appellate attorneys or checking the OCDLA listserv. The majority relies heavily on the affidavits from two OPDS appellate lawyers. Upon close scrutiny, however, those affidavits do not contain any information pertinent to whether petitioner's counsel acted consistently with prevailing standards and norms. The majority summarizes those affidavits as follows:

> "Viewed in the light most favorable to petitioner, the affidavits permit reasonable inferences that knowledge and advice regarding the strategy of raising *Southard*-type challenges was being widely shared with criminal defense trial lawyers at the time of petitioner's trial, and particularly with those who—like petitioner's attorney—had access to the OCDLA listserv. The affidavit from attorney Johnson avers that appellate attorneys for [OPDS] made an effort 'to provide guidance to the criminal defense trial bar' regarding 'legal issues worthy of preserving for appeal' and did so 'by being available for phone consultations, making presentations at continuing legal education seminars and by actively participating on the OCDLA listserv.' Among the guidance that they were sharing in 2001 was their assessment that the diagnosis 'issue was ripe for Supreme Court review.' The appellate attorneys 'did everything [they] could to encourage trial attorneys to continue to press the issue,' and the 'issue was broadly discussed on the OCDLA listserv following the decision in *Trager*.' The affidavit from attorney Allen makes many of the same representations."

369 Or at 452. From that evidence, the majority concludes that "[t]he inferences that can reasonably be drawn from those affidavits" could establish that counsel failed to prepare himself on the law. *Id*. Unlike the majority, I cannot see any way in which the cited evidence could support that legal conclusion through reasonable inference.

It bears emphasis that petitioner has not alleged that his counsel generally failed to take reasonable measures to investigate the case, research the law, or otherwise prepare for trial. Petitioner alleges inadequate performance solely in the failure to make the *Southard*-type objection.

It also bears emphasis that petitioner's counsel, in believing that he had no viable objection to admitting the Steinberg diagnosis, *correctly understood* the law that controlled at the time. The majority does not, as I understand it, view the record as permitting an inference that counsel was unfamiliar with the relevant law. Yes, counsel indicated in his affidavit, many years later, that he was not familiar in 2001 with *Trager* (at least by name). Viewed in the light most favorable to petitioner, that fact could permit an inference that counsel was not aware of controlling precedent on an important point of law. However, even if one assumes that counsel did not perform some basic legal research on that point, doing so would have led him directly to *Trager*, thus confirming what he already understood the controlling law to be—that there was no basis for objecting to the Steinberg diagnosis. And, as the majority elsewhere holds, competent lawyers at the time were not required to look past *Trager* to anticipate that this court would ultimately overrule it. 369 Or at 443. In other words, the majority's conclusion that the "state of the law" was not enough to put competent attorneys on notice of a *Southard* strategy also precludes any inference that petitioner's counsel had a constitutionally deficient understanding of the relevant law.

The result of the majority's analysis, however, is that petitioner's counsel, *despite* having a correct understanding of the applicable law, could be found to have acted deficiently by not consulting with OPDS appellate attorneys or researching what was being said on the OCDLA listserv. The idea that an attorney with a correct understanding of controlling legal principles nonetheless failed to "prepare on the law" is novel, and I am unaware of any case so holding. The notion leaves me skeptical and should alarm trial lawyers, particularly overworked public defenders.[1]

---

[1] Our state's crisis in funding indigent criminal defense is now well documented. Oregon is said to be 1,296 public defenders short of what it needs to adequately vindicate the constitutional right to counsel. American Bar Association Standing Committee on Legal Aid and Indigent Defense, *The Oregon Project: An Analysis of the Oregon Public Defense System and Attorney Workload Standards* 5 (2022), https://www.americanbar.org/content/dam/aba/administrative/legal_aid_indigent_defendants/ls-sclaid-or-proj-rept.pdf (accessed Mar 28, 2022). It is estimated that, for the existing 592 public defenders to provide effective assistance of counsel with current caseloads, each of them would need to spend 26.6 hours per working day on case-specific public defense work. *Id.*

At a minimum, however, the proposition that an attorney who had a correct understanding of the law was required to do *more* to "prepare on the law" would seem to require evidence of prevailing professional norms regarding what additional steps, exactly, reasonable attorneys would have taken. On those, this record is silent. The affidavits cited by the majority provide some information about what OPDS appellate lawyers were recommending. They provide no information about what trial lawyers were doing. As the majority notes elsewhere, petitioner presented no evidence of norms, typical investigatory or research techniques, or standards of practice among reasonably competent criminal *trial* lawyers. 369 Or at 443.[2]

To put it another way, the record tells us that information about the *Southard* strategy was being broadcast on a particular channel. What matters, however, is whether reasonably competent lawyers were supposed to be monitoring that channel. Without any evidence of the extent to which consultation with OPDS or the OCDLA listserv is a feature of routine legal research and trial preparation, any determination that petitioner's counsel should have taken those steps would be speculative, partaking of the "hindsight" that is not and must not be the way courts evaluate the adequacy of counsel. *Pereida-Alba*, 356 Or at 662 (explaining that courts do not second-guess an attorney's decision "with the benefit of hindsight").

In short, the question that the majority holds open—whether petitioner's counsel should have discovered the *Southard* strategy and preserved an objection to Steinberg's evidence—is not a question of fact. It is a question of law. The only purpose of a trial would be to resolve questions of fact that ultimately bear on that legal question. Here, the only

---

[2] To be clear, although the majority reads the affidavits as permitting an inference that the *Southard* strategy was being "widely shared" with criminal defense lawyers, that is still inadequate to support any further inference about standards of practice for those defense lawyers. After all, if the evidence permitted the conclusion that OPDS's advice had somehow penetrated the consciousness of the criminal trial bar to the point that the *Southard* strategy was routinely being pursued at trial, then that evidence would also, necessarily, permit the conclusion that pursuing that strategy was a prevailing professional norm. But that is precisely the conclusion that the majority acknowledges is not supported by any evidence in this record. 369 Or at 443.

factual questions that conceivably exist concern whether petitioner's counsel acted inconsistently with prevailing professional norms. At summary judgment, it was petitioner's burden to produce evidence to permit a reasonable inference in that regard.[3] Because, by the majority's own account, the record contains no evidence about prevailing professional norms among trial lawyers, petitioner failed to carry his burden. Thus, the post-conviction court did not err in granting summary judgment for the superintendent.

I respectfully dissent.

Balmer, J., joins in this dissenting opinion.

---

[3] Under ORCP 47 C, "[n]o genuine issue as to a material fact exists if, based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."